UNITED STATES of America,
Plaintiff,

v.

Mingo FLORES, Defendant.

No. CR01–3052–MWB.

United States District Court,
N.D. Iowa,
Central Division.

Sept. 11, 2002.

Charles J. Williams, U.S. Attorney's Office, Northern District of Iowa, Cedar Rapids, IA, for Plaintiff.

Priscilla Elizabeth Forsyth, Federal Public Defender, Sioux City, IA, for Defendant.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S SENTENCE**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1017
   A. Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1017
   B. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1018

II. DISCUSSION ...................................................1019
   A. *Horizontal Departure: Adequacy Of Criminal History Category* .......1020
     1. *Is criminal history category IV an accurate reflection of the*
       *seriousness of Flores's past criminal conduct?* ..................1021
     2. *Likelihood Flores will commit other crimes* ......................1023
     3. *Extent of horizontal departure* ................................1026
   B. *Vertical Departure Pursuant To 5K2.0* ..............................1027
     1. *Is Flores's case outside the "heartland"?* .........................1028
     2. *Extent of vertical departure* ...................................1029
       a. *Analogy 1: Extensive criminal history and likelihood of*
          *recidivism* ..........................................1030
       b. *Analogy 2: History of assaultive conduct* ....................1032

III. CONCLUSION ................................................1033

The United States Sentencing Commission has set forth a detailed and complex framework to guide the district courts' discretion in sentencing criminal defendants. Yet, the United States Sentencing Guidelines not only leave room for an individualized assessment of each defendant's particular characteristics and circumstances, they command it:

> The [Sentencing Reform] Act [of 1984] did not eliminate all of the district court's discretion.... Acknowledging the wisdom, even the necessity, of sentencing procedures that take into account individual circumstances, *see* 28 U.S.C. § 991(b)(1)(B), Congress allows district courts to depart from the applicable Guideline range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

*Koon v. United States*, 518 U.S. 81, 92, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (quoting 18 U.S.C. § 3553(b)); *accord United States v. Decora*, 177 F.3d 676, 678 (8th Cir.1999) ("Although the sentencing guidelines are designed to achieve uniformity in

federal sentencing, they also preserve for the sentencing judge the discretion to depart.") (citing *Mistretta v. United States*, 488 U.S. 361, 367, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989)). In this case, the court is presented with an eighteen year-old incorrigible criminal offender with a long history of assaultive behavior and must decide whether his dangerousness, propensity for violence, extensive criminal history, and proclivity for recidivism warrant an upward departure in his sentence.

## I. INTRODUCTION

### A. Procedural Background

This matter is before the court pursuant to the court's *sua sponte* notice of a potential upward departure from the defendant's Guideline range. On October 5, 2001, the federal Grand Jury returned a one count indictment against defendant Mingo Flores ("Flores"), charging that on or about May 1, 2001, in the Northern District of Iowa, Flores knowingly and intentionally possessed with the intent to distribute approximately 391 grams of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). On January 24, 2002, the defendant, Mingo Flores, pleaded guilty to the indictment, pursuant to a plea agreement, before Magistrate Judge Paul A. Zoss.[1] On February 26,

---

1. The defendant consented to appear before United States Magistrate Judge Paul A. Zoss on October 23, 2001.

2002, the undersigned accepted the defendant's plea of guilty, as recommended by Judge Zoss in his Report and Recommendation Concerning Plea of Guilty.

The court scheduled Flores to be sentenced on May 9, 2002. However, at the time of his scheduled sentencing hearing, the court gave notice that it was seriously contemplating a substantial upward departure from the defendant's Guideline range based on the defendant's criminal history and demonstrated history of violence. Upon learning of the court's intention, counsel for defendant moved for a continuance. The court granted defendant's request, and Flores came before the court for sentencing on September 10, 2002.

The offense to which Flores pleaded guilty carries a mandatory minimum term of imprisonment of ten years. 21 U.S.C. § 841(b)(1)(A). The maximum term of imprisonment for the offense is life, a fine of up to $4,000,000, and a term of supervised release of five years up to life. *Id.*

### B. Factual Background

Pursuant to Federal Rule of Criminal Procedure 32, a United States Probation Officer prepared a Presentence Investigation Report ("PSIR") in this case. The PSIR scored Flores as a Criminal History category IV, with an adjusted Total Offense Level of 25. Based on this calculation, Flores's Guideline range is 84 to 105 months; however, his Guideline range is trumped by the 10 year mandatory minimum term of imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(A). Neither the United States Attorney's Office nor the defendant filed objections to the factual matters contained in the PSIR. Accordingly, the court accepts these factual allegations as true and may consider them in contemplating a departure. *United States v. Bougie*, 279

F.3d 648, 650–51 (8th Cir.2002) (citing *United States v. Joshua*, 40 F.3d 948 (8th Cir.1994)); *see, e.g., United States v. Young*, 272 F.3d 1052, 1055 (8th Cir.2001) ("[U]nless a defendant objects to specific factual allegations contained in the PSR, a district court may accept the facts as true for purposes of sentencing.") (citing *United States v. Moser*, 168 F.3d 1130, 1132 (8th Cir.1999)); *United States v. LaRoche*, 83 F.3d 958, 959 (8th Cir.1996) (per curiam) ("A district court may accept as true all factual allegations contained in the PSR that are not specifically objected to by the parties.") (citing *United States v. Montanye*, 996 F.2d 190, 192–93 (8th Cir.1993) (en banc)); *United States v. Beatty*, 9 F.3d 686, 690 (8th Cir.1993) ("Under our cases, a district court is clearly permitted to accept as true all factual allegations contained in the PSR that are not specifically objected to by the parties.") (citing *Montanye*, 996 F.2d at 192–93); *cf. United States v. Fortier*, 911 F.2d 100, 103 (8th Cir.1990) ("A court may rely solely upon a presentence report for findings relevant to sentencing *only* if the facts in the presentence report are not disputed by the defendant."), *overruled on other grounds, United States v. Wise*, 976 F.2d 393 (8th Cir. 1992) (en banc).

Flores is merely eighteen years old, yet he has one of the more extensive and violent criminal histories that the undersigned has seen in the nearly 700 criminal defendants sentenced by this court.[2] Flores's criminal behavior began at the tender age of seven and continued unabated until he was arrested for the crime for which this court is now sentencing him. Because of privacy concerns, as evidenced in statutes such as 18 U.S.C. § 5038 and Iowa Code § 232.55, the court will not

---

**2.** In fact, as of May 1, 2002, I have sentenced 633 defendants to 48,391 months of imprisonment.

narrate Flores's entire criminal history. It suffices to say, however, that Flores's criminal behavior includes a long history of assaultive behavior and disrespect for authority. The probation officer who prepared Flores's PSIR summarized Flores's criminal history as follows:

The defendant has a significant juvenile record involving three adjudications for Assault with Dangerous Weapons (brandishing a knife), Assault, Refusing to Obey a Lawful order, Theft—Fourth Degree, Interference With Official Acts, Possession of Marijuana, and Public Intoxication. He had two juvenile cases (Carrying Weapons and Attempted Third Degree Burglary) waived to adult court. The carrying Weapons offense involved threatening a person with a .30 caliber handgun. The defendant also had prior juvenile dispositions for Theft—Fifth Degree (three separate cases), Carrying a Concealed Weapon (a butterfly knife), and Disorderly Conduct. Furthermore, he has other arrests for Criminal Mischief—Fourth Degree (two arrests), Burglary—Third Degree, Serious Assault (two arrests), Making Homemade Explosives, Threats With Weapons, Theft—Second Degree, Theft from Vehicles, Harassment, Public Intoxication, and Attempted Murder as well as two status offenses.

Sentencing Recommendation, *Justification.*

Perhaps most illustrative of the defendant's propensity for violence, a criminal complaint that is factually related to the drug charge to which Flores pleaded guilty in federal court was filed in state court in April of 2001. The complaint reflects that on April 28, 2001, Flores attempted to murder his sister's boyfriend merely because his sister requested Flores to do so. Flores's sister and boyfriend were engaged in a verbal argument when Flores drove up to the scene as a passenger in a car. When the defendant's sister told him to shoot her boyfriend, Flores fired five shots, striking the boyfriend twice. Two witnesses identified Flores as the shooter. It is while executing a search warrant on this attempted murder investigation that police found 81 sugar cubes dosed with LSD, as well as liquid LSD, drug notes, drug-related paraphernalia, and a digital scale—the evidence that formed the basis of the federal drug charges filed against Flores.

## II. DISCUSSION

"Sentencing courts should 'treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes.'" *United States v. Buckendahl,* 251 F.3d 753, 758 (8th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 633, 151 L.Ed.2d 553 (2001) (quoting U.S.S.G. Ch. 1, Pt. A(4)(b)). In *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), the United States Supreme Court held that district courts are authorized to depart when they encounter a case that falls "outside the heartland" of cases anticipated by the Commission when formulating the Guidelines. *Koon,* 518 U.S. at 98, 116 S.Ct. 2035. Namely, the Guidelines allow for departures if a sentencing court finds " 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). "It is up to the district court to determine whether certain factors take the case out of the 'heartland,' and 'make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing.'" *United States v. Whiteskunk,* 162 F.3d 1244, 1249 (10th Cir.1998) (quoting *Koon,* 518 U.S. at 98, 116 S.Ct. 2035). Here, potential grounds that make Flores's case atypical

include underrepresentation of criminal history, propensity for violence, and incorrigibility.

In the Eighth Circuit, district courts employ the following framework when considering a Guideline departure:

[1] If the special factor [identified by the court as a potential ground for departure] is a forbidden factor, the sentencing court cannot use it as a basis for departure. [2] If the special factor is an encouraged factor, the court is authorized to depart if the applicable guideline does not already take it into account. [3] If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. [4] If a factor is unmentioned in the guidelines, the court must, after considering the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," decide whether it is sufficient to take the case out of the Guideline's heartland.

*Buckendahl,* 251 F.3d at 758 (quoting *Koon,* 518 U.S. at 95–96, 116 S.Ct. 2035 (citations omitted)).

In this case, the court has identified the possible inadequacy of Flores's criminal history category, as well as his potential to recidivate, as grounds for an upward departure in his sentencing. Because Guideline 4A1.3 discusses the possibility of departures based on these considerations, this case implicates an "encouraged" factor. Furthermore, the Eighth Circuit has recognized that criminal history concerns can be grounds for a departure under Guideline 5K2.0. *See United States v. Nomeland,* 7 F.3d 744, 747–48 (8th Cir. 1993) (affirming 5K2.0 departure based on defendant's extensive and violent criminal

activity). Accordingly, the court will consider a departure under sections 4A1.3 and 5K2.0 and will determine whether Flores's case is "different from the ordinary case where the [potentially extraordinary] factor is present." *See id.*

### A. Horizontal Departure: Adequacy Of Criminal History Category

This court's consideration of the adequacy of Flores's criminal history category as a ground for departure directly implicates Guideline 4A1.3.

Under the Guidelines, every sentence is determined by a combination of an offense- and an offender-based component. The Sentencing Commission has developed a sentencing table to guide the judge in determining the appropriate sentence range for a particular offense committed by a particular offender. The sentencing table indicates the sentence ranges for possible combinations of offense- and offender-based components, with the horizontal axis reflecting the offender's criminal history and the vertical axis reflecting the appropriate offense level.

U.S.S.G. § Ch. 5, Pt. A. "Horizontal departures are increases or decreases based on the relevant criminal history category applicable to the defendant," whereas "[v]ertical departures are increases or decreases based on the offense level." *United States v. Taylor,* 88 F.3d 938, 947 (11th Cir.1996). Departures based on the underrepresentation of a defendant's criminal history must first proceed along the horizontal axis before proceeding along the vertical axis. *See United States v. Day,* 998 F.2d 622, 625 (8th Cir.1993) (holding that a court may depart above the sentence provided for in criminal history category VI under section 4A1.3 only upon a finding that the resulting sentence is inadequate). *But see, e.g., United States v. Smith,* 289 F.3d 696, 711 (11th Cir.2002) (holding departures under Guideline 4A1.3 must proceed only

along the horizontal axis); *United States v. Martin*, 278 F.3d 988, 1002–03 (9th Cir. 2002) ("The guidelines recognize that the criminal history category and the offense-level score are to be treated differently.").

Guideline 4A1.3 provides: "If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range." U.S.S.G. § 4A1.3. Thus, this provision of the Guidelines recognizes that a departure from a defendant's guideline range may be warranted under two distinct circumstances: (1) when the defendant's criminal history category is significantly underrepresented; and (2) when reliable information illustrates a likelihood of recidivism. *Id.*

The Sentencing Commission listed several examples of when a departure pursuant to this section may be appropriate:

(a) prior sentence(s) not used in computing the criminal history category (*e.g.*, sentences for foreign and tribal offenses);

(b) prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions;

(c) prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order;

(d) whether the defendant was pending trial or sentencing on another charge at the time of the instant offense;

(e) prior similar adult criminal conduct not resulting in a criminal conviction.

*Id.*

Young criminal defendants with particularly egregious criminal backgrounds are prime candidates for application of this provision. The Commentary to section 4A1.3 acknowledges this truism:

This policy statement recognizes that the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur. For example, a defendant with an extensive record of serious, assaultive conduct who had received what might now be considered extremely lenient treatment in the past might have the same criminal history category as a defendant who had a record of less serious conduct. Yet, the first defendant's criminal history clearly may be more serious. *This may be particularly true in the case of younger defendants (e.g., defendants in their early twenties or younger) who are more likely to have received repeated lenient treatment, yet who may actually pose a greater risk of serious recidivism than older defendants.* This policy statement authorizes the consideration of a departure from the guidelines in the limited circumstances where reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's criminal history or likelihood of recidivism, and provides guidance for the consideration of such departures.

*Id.* comment. 4A1.3 (emphasis added).

Flores's criminal record is precisely the ilk of criminal profiles described by the Commission as justifying a departure— that of a juvenile offender who consistently received lenient treatment because of his age, but constantly re-offended, with the offenses escalating to assaults. *See* U.S.S.G. § 4A1.3, Commentary; *id.* § 4A1.2, Application Note 8.

### 1. Is criminal history category IV an accurate reflection of the seriousness of Flores's past criminal conduct?

The court notes that Flores's juvenile conduct can be used as a basis for departure, particularly if it is similar or dissimi-

lar but serious conduct. *See* U.S.S.G. § 4A1.2 comment, n. 8 (if a sentence imposed outside the time periods in section 4A1.2(d) or (e) is evidence of similar, or serious dissimilar, criminal conduct, the court may consider this information in determining whether an upward departure is warranted under § 4A1.3); *United States v. Joshua*, 40 F.3d 948, 953 (8th Cir.1994) ("[J]uvenile conduct can be used as a basis for departure, particularly if it is similar, or dissimilar but serious conduct.") (citing U.S.S.G. § 4A1.2 comment, n. 8); *United States v. Griess*, 971 F.2d 1368, 1374 (8th Cir.1992) (juvenile convictions excluded from defendant's criminal history may be considered under 4A1.3 when PSIR contains admitted facts); *see also United States v. Doe*, 18 F.3d 41, 45–47 (1st Cir. 1994) (Guidelines allow consideration of juvenile criminal conduct); *cf. United States v. Sweet*, 985 F.2d 443, 446 (8th Cir.1993) (adult criminal conduct for which defendant was arrested but not convicted may be considered under 4A1.3).

Flores's history of assaultive conduct is unmatched by any defendant under age 21 that this court has seen. He has three assault adjudications, one of which involved the use of a weapon. In addition, the underlying facts of several of the defendant's charged and uncharged criminal conduct involved assaultive behavior and serious threats. Flores's litany of assaultive conduct includes: While brandishing a knife, the defendant stated "I'll cut you" to the victim; the defendant threatened another individual with a .380 caliber handgun and pleaded guilty in adult court to a carrying weapons charge; on multiple occasions, the defendant threw rocks off of a bridge and through the windshields of passing vehicles; he and another juvenile made two homemade "Works Bombs," one of which did not explode but was picked up by a small child; and during an argument in the park, the defendant threatened to shoot several people. The defendant, fur-

thermore, has not discriminated against his victims, having assault adjudications involving both male and female victims.

And while the court finds the seriousness of the above-mentioned conduct alone sufficient to justify a departure in this case, the most striking aspect of Flores's criminal history is the culmination of his assaultive behavior and his utter disregard for the lives of others, as evinced in the shooting and attempted murder of his sister's boyfriend. The ***unobjected*** to PSIR indicates the following:

> The Complaint in Cerro Gordo County . . . reflects that on April 28, 2001, the defendant attempted to commit murder by shooting Steve Huerta with a .45 caliber handgun in an alley . . . in Mason City, Iowa. Huerta was hospitalized and treated for gun shot wounds to both his legs. He provided officers with a statement regarding the incident. Heurta [sic] advised that he was dating the defendant's older sister, Vicki Flores. He and Vicki Flores had been having a verbal argument in the alley when Huerta threatened to slash Flores' tires. As they argued, a car drove up to the scene with the defendant as the passenger. As the defendant exited the vehicle, Vicki Flores told him to shoot Huerta. The defendant immediately shot at Huerta five times, striking him twice. Officers received two anonymous reports identifying the defendant as the shooter.

PSIR, at ¶ 15.

■ Flores was not assessed any points for the attempted murder of Huerta because the charges were dismissed; instead, Flores has agreed to plead guilty to a reduced charge of Terrorism *after* he is sentenced in this case. The import of this legal maneuvering is obvious: By pleading guilty to that charge post-sentencing in this case, Flores is not assessed any points for this charge. Nor did he receive points for several recent offenses, occurring with-

in the past five years, because the state did not prosecute. The most grave of these charges was Flores's July 29, 2000 arrest for Serious Assault. In addition, in 1999, Flores was arrested for Theft—Second Degree and for Theft From Vehicles. However, the PSIR does not assign points to these offenses because their disposition is unknown. In fact, despite Flores's multitude of juvenile adjudications, Flores received only three criminal history points for his juvenile adjudications. *See* U.S.S.G. § 4A1.2(d)(2)(B) ("add 1 point under § 4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense"). Accordingly, because serious and extraordinarily violent offenses were not factored into the calculation of Flores's criminal history category, the court finds that a horizontal departure in his criminal history category is warranted in this case. In short, Flores's extensive criminal history puts him outside the "heartland" of offenders falling within criminal history category IV.

### 2. Likelihood Flores will commit other crimes

As previously noted, Guideline 4A1.3 contemplates an upward departure for underrepresentation of the seriousness of past criminal conduct, as well as when reliable information indicates a high likelihood of recidivism. The progression of Flores's assaultive conduct, culminating in an unprovoked attempted murder, clearly demonstrates that leniency has been an ineffective deterrent for this young defendant. Despite ten juvenile adjudications, two adult criminal convictions, and at least fourteen dismissals, the defendant has not been initially sentenced to serve any jail time. Instead, he was sentenced to juvenile probation and day treatment for his juvenile adjudications and to two years prison suspended on his adult conviction of Carrying Weapons. Flores was incarcerated or placed in residential care only after he violated the terms of his probation—he was sent to a residential treatment facility, Woodward Academy,[3] for nine months in June of 2000, and, on August 13, 2001, Flores's original sentence on his Carrying Weapons conviction was set aside, and he was sentenced to thirty days of jail.

Moreover, the defendant was under criminal justice sentences for Carrying Weapons and Third Degree Attempted Burglary when he committed the federal drug offense and attempted murder. As a result, he received two points in his total offense level calculation pursuant to U.S.S.G. § 4A1.1(d). However, what is more, it appears from his PSIR that Flores was under some sort of criminal justice sentence, whether probation or an informal adjustment agreement, which is a form of informal probation, when he committed many of his offenses. For example, the PSIR indicates that at least four of Flores's uncharged juvenile offenses were dismissed because action was being taken on more serious charges against Flores. Indeed, the county attorney did not file a Trial Information against Flores concerning the attempted murder of Steve Huerta.[4] Clearly Flores's previous lenient sen-

---

3. "Woodward Academy is a 120 bed residential foster care facility for male youth (adjudicated delinquent or child in need of assistance CINA) between the ages of 12[and] 18." <http:// www.woodwardacademy.20megsfree.com/index.html>.

4. Flores has agreed that, after his sentencing for this federal drug offense, he will plead guilty to a charge of Terrorism for shooting Steve Huerta. Until the statute was amended this year, terrorism was a Class C felony and carried a ten year maximum term of imprisonment. Now, terrorism in Iowa is a Class B felony and carries a maximum term of imprisonment of 50 years. Iowa Code § 708.6, Iowa Legis S.F. 2146 (2002).

tences have not served to deter him from committing crimes.

The Eighth Circuit Court of Appeals has repeatedly recognized that, in determining the likelihood of recidivism, a sentencing court may " 'take into account any evidence of obvious incorrigibility and conclude that ... leniency has not been effective.' " *United States v. Herr*, 202 F.3d 1014, 1016–17 (8th Cir.2000) (internal citations omitted) (alteration provided by Eighth Circuit) (quoting *United States v. Goings*, 200 F.3d 539, 542 (8th Cir.2000)) (quoting *United States v. Cook*, 972 F.2d 218, 222 (8th Cir.1992)); *accord United States v. Handley*, 221 F.3d 1344 (8th Cir. 2000) (per curiam) (table op.) (affirming upward departure where district court departed after concluding that defendant's criminal history significantly underrepresented his past criminal conduct and likelihood of recidivism and past lenient sentences had not deterred defendant from committing additional offenses), *cert. denied*, 532 U.S. 935, 121 S.Ct. 1389, 149 L.Ed.2d 313 (2001); *United States v. Saffeels*, 39 F.3d 833 (8th Cir.1994) (affirming upward departure based on defendant's demonstrated incorrigibility); *United States v. Lara–Banda*, 972 F.2d 958 (8th Cir.1992) (affirming upward departure where district court departed based on determination that defendant was an unrepentant, incorrigible recidivist, who posed significant threat to the safety of the community, and based on lenient treatment defendant received in state court); *United States v. Lang*, 898 F.2d 1378, 1380 (8th Cir.1990) (recognizing that leniency may result in underrepresentation of a defendant's criminal history); *United States v. Carey*, 898 F.2d 642, 645–46 (8th Cir.1990) (recognizing that district court may make an upward departure where there is evidence of obvious incorrigibility and a history of prior convictions for the same type of offense). As a matter of law, district courts are permitted to consider evidence of incorrigibility as a ground for departure under the Sentencing Guidelines. *Saffeels*, 39 F.3d at 837–38.

In this regard, *United States v. Cook*, 972 F.2d 218 (8th Cir.1992), is instructive. In that case, the district court granted the government's motion to depart under Guideline 4A1.3. *Id.* at 221. The court based its ruling on the likelihood of the defendant's future criminal misconduct and on the nature of his offenses. *Id.* On appeal, the Eighth Circuit held that "the district court [was] clearly permitted to consider Cook's significant history of violent episodes, use of weapons, and continuing pattern of disrespect for, flight from and assault upon police officers. The district court was also permitted to consider Cook's capacity for future violence and recidivism, based upon ... threatening statements he made to his probation officer." *Id.* at 222.

While Flores's criminal background does not involve any assaults on police officers, his criminal history is significantly more extensive than that involved in *Cook*, especially in light of Flores's age and the limited amount of time in which he has had to amass such an extensive criminal history. In *Cook*, the district court explicitly did not consider the defendant's uncounted tribal court convictions in making its decision to depart upward. *Id.* at 221. The only convictions that factored into the PSIR's scoring of the defendant's criminal history category were his two adult convictions—one conviction in connection with a high speed chase and one in connection with an attempted armed takeover of a law enforcement center. *Id.* at 221 n. 3. Thus, the district court in *Cook* determined, and the Eighth Circuit upheld, that, even absent consideration of the defendant's uncounted tribal convictions, the violent and recidivist nature of Cook's criminal history

warranted an upward departure in the defendant's sentencing.

Here, too, the violent and recidivist nature of Flores's criminal background justifies a departure. What is more, this court *is* considering Flores's uncounted juvenile arrests and adjudications as evidence of incorrigibility. *See, e.g., Herr,* 202 F.3d at 1017 (dissimilar, non-serious, uncounted offenses " 'may be evidence that leniency has not been effective' " even if standing alone those offenses are not grounds for a departure) (quoting *Joshua,* 40 F.3d at 953) (citing *United States v. Ewing,* 129 F.3d 430, 437 (7th Cir.1997) ("And, even if all of the prior dissimilar convictions were not sufficiently serious, the court still could have considered them for the limited purpose of establishing the incorrigible character of the defendant's criminal propensities") (internal quotation omitted by *Herr* court)); *accord United States v. Walker,* 98 F.3d 944 (7th Cir.1996) (same); *United States v. Beasley,* 90 F.3d 400 (9th Cir. 1996) (same). Further, Flores's propensity for violence began at a very young age and escalated to an attempted murder. His record is not wholly comprised of peccadilloes that the court should overlook as mere youthful transgressions. In addition, Flores's history of assaultive conduct demonstrates that he is a danger to the community. His guideline calculation, however, does not take this factor into account because of the state's action and inaction on the attempted murder charge and on other assaults, as well as because of the age of the crimes. Nevertheless, these crimes show that Flores poses a significant risk to the community.

Flores argues in his Sentencing Memorandum that the court should not depart upward, in part, because there is no evidence that he is unrepentant. In *United*

*States v. Lara–Banda,* 972 F.2d 958 (8th Cir.1992), the Eighth Circuit held that "[t]he [district] court did not err in determining that an unrepentant, incorrigible recidivist, who poses a significant threat to the safety of the community, should have a sentence imposed which is more severe than that described by the sentencing guidelines." *Lara–Banda,* 972 F.2d at 960. The court notably did not hold that, in order to justify a departure, a defendant must be unrepentant *and* incorrigible. In addition, the fact that Flores has continually demonstrated a propensity to commit crimes reveals his uncompromising recidivist nature. That he may be remorseful in the face of a potential life sentence[5] does not alter the court's interpretation of his criminal past as a strong indication of the likelihood that Flores will continue to be a menace to society by committing further criminal offenses.

Moreover, the defendant's argument merely makes a superficial distinction between the circumstances justifying a departure in Flores's case and in *Lara–Banda.* As in *Lara–Banda,* the rapid succession of Flores's repeated offenses indicates a high likelihood of future criminal misconduct. This risk of recidivism was the gravamen of the *Lara–Banda* court's decision. *See id.* at 959–60 (affirming upward departure where district court specifically relied on: "1) Lara–Banda's proclivity for recidivism; 2) Lara–Banda's need to be deterred from future criminal conduct; 3) Lara–Banda's criminal history category which inadequately reflected the seriousness of his prior criminal acts; and 4) the fact that Lara–Banda's prior conduct shows that he represents a serious danger to the residents of Iowa.").

---

**5.** At Flores's initial sentencing hearing on May 9, 2002, in which the court gave notice of its intention to depart, the court stated that it was considering a substantial departure—possibly up to a life sentence.

In *Lara–Banda*, the defendant had been arrested fifteen times for various offenses, which ranged from reckless driving, to carrying a concealed weapon, to assault. *Id.* at 959. Furthermore, Lara–Banda had been residing in the United States without documentation for over ten years and had been deported on eight separate occasions, returning after each deportation, "unrepentant and undeterred." *Id.* Despite all Lara–Banda's arrests and deportations, however, he served only eight to ten months in state jails and five and one-half years in federal prison pursuant to a prior conviction for illegal entry into the United States. *Id.* On appeal, the Eighth Circuit affirmed the district court's horizontal departure from a criminal history category V to VI and vertical departure from a term of imprisonment range of 24 to 30 months to 48 months. *Id.*

Like the *Lara–Banda* court, this court finds that Flores's previous lenient treatment resulted in a significant understatement of the seriousness of his criminal history. While Lara–Banda was not assessed criminal history points reflective of his true criminal conduct because his arrests and convictions on state charges did not result in a term of imprisonment of one year or greater, Flores similarly was not assessed criminal history points for several serious offenses because (1) of the age of the adjudications and (2) the state's decision not to prosecute offenses due to more serious pending charges or in deference of this federal sentencing. In both cases, the defendants received lenient treatment that resulted in an exceptional underrepresentation of the defendants' criminal history categories.

### 3. *Extent of horizontal departure*

Under both theories of departure posited in Guideline 4A1.3—underrepresentation of the seriousness of the defendant's criminal history and the likelihood of future criminal conduct—the court finds that a horizontal departure is warranted in this case. The court must, therefore, determine the extent of the departure. The Eighth Circuit Court of Appeals has prescribed the method of calculating an upward departure based upon criminal history:

> To impose an upward departure under § 4A1.3, the sentencing court first must proceed along the criminal history axis of the sentencing matrix, comparing the defendant's criminal history with the criminal histories of other offenders in each higher category. If the court reaches the highest criminal history category, Category VI, and concludes that the Guidelines range is still inadequate, it may impose a reasonable sentence above the Category VI range. *See United States v. Lara–Banda*, 972 F.2d 958, 959–60 (8th Cir.1992); *United States v. Anderson*, 886 F.2d 215, 216 (8th Cir.1989).

*Day*, 998 F.2d at 625.

As scored in the PSIR, Flores's criminal history is a category IV. However, the undersigned has never seen a criminal history category IV assigned to a defendant with a criminal background similar to Flores's. Even ignoring Flores's non-violent crimes, had Flores received criminal history points for each of the assaults and the attempted murder, he would have received three additional points, for a total of ten criminal history points. [PSIR, at ¶¶ 53, 62, 63]. Ten points would place Flores squarely in a category V.

Nevertheless, category V is a woefully inadequate representation of the seriousness of Flores's past criminal conduct and is a poor indicator of the likelihood that he will recidivate. As previously noted, Flores has repeatedly demonstrated his propensity for violence. Based on the court's extensive experience in sentencing criminal defendants, a criminal history cat-

egory VI is much more reflective of the seriousness of Flores's criminal background than is a category V. The court finds that Flores's criminal history is significantly more egregious than that contemplated by the Commission in defining criminal history categories IV and V. Therefore, the court will depart upward, concluding that criminal history category IV underrepresents the seriousness of the defendant's past criminal conduct and that category VI is much more reflective of the true nature of the defendant's criminal past and is a more accurate indicator of the likelihood he will engage in future violations of the law.[6]

Still, a departure to a criminal history category VI, with an adjusted offense level of 25, yields only a small change in Flores's guideline range because of the mandatory minimum that is implicated in this case. As a category VI, Flores's effective guideline range is 120 to 137 months. The court finds, however, that a 137 month term of imprisonment is insufficient to deter and incapacitate this defendant based on Flores's demonstrated incorrigibility, the danger he represents to the community, and the fact that he shot and wounded an individual but received no criminal history points for this violent attack.

The court, therefore, is authorized, guided by the Eighth Circuit's ruling in *Day*, to impose a greater term of imprisonment than provided for by a criminal history category VI. *Day*, 998 F.2d at 625 (ruling that if a departure to criminal history category VI yields an inadequate sentence, the sentencing court may impose a term of imprisonment outside the Guideline range). Nevertheless, the court will consider a "vertical departure," or departure based on the offense level, under Guideline 5K2.0, even though the court recognizes its authority to depart vertically under Guideline 4A1.3. That is so because the analyses with respect to the extent of a potential departure are coextensive. Consequently, the court will turn now to a consideration of whether a vertical departure pursuant to Guideline 5K2.0 is appropriate.

### B. Vertical Departure Pursuant To 5K2.0

Wholly separate from a district court's authority to depart pursuant to Guideline 4A1.3, district courts are authorized to depart from a defendant's applicable guideline range under Guideline 5K2.0 when " 'there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence

---

**6.** In the interests of clarity, the court notes it has taken into consideration only the following uncounted offenses in departing upward to a criminal history category VI in its analysis under the first subpart of Guideline 4A1.3: Attempted Murder (5/1/01), Serious Assault (7/29/00), Making Homemade Explosives (8/20/96), and Serious Assault (10/3/94). Consideration of these offenses is appropriate because they are serious crimes, and, while each did not result in a conviction, or even a formal charge, the PSIR contains admitted facts, which are properly considered by the court. *See Joshua*, 40 F.3d at 953 (stating that district court could consider incidents in the defendant's criminal history where the

PSIR contains admitted facts but holding that mere allegations of criminal conduct could not form the basis of a departure under section 4A1.3) However, in Part IIA.2, *infra*, of this opinion, which addresses a departure based on the likelihood that Flores will recidivate, the court has taken into consideration all of Flores's past criminal conduct because "[e]ven offenses which are minor and dissimilar to the offense of conviction may be considered as evidence of a risk of recidivism if they evince a defendant's 'obvious incorrigibility.'" *United States v. Levi*, 229 F.3d 677, 679 (8th Cir.2000) (quoting *United States v. Herr*, 202 F.3d 1014, 1016 (8th Cir.2000)).

different from that described.'" U.S.S.G. § 5K2.0, Policy Statement (quoting 18 U.S.C. § 3553(b)). As previously noted, the exercise of this authority to depart is contingent upon the court's finding that a case falls outside the "heartland." *See Koon,* 518 U.S. at 85, 116 S.Ct. 2035 ("A district court must impose a sentence within the applicable Guideline range, if it finds the case to be a typical one."); U.S.S.G. ch. 1, pt. A., intro. comment 4(b) ("The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, . . . the court may consider whether a departure is warranted."). In making that finding, "a court must consider 'the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing.'" *Herr,* 202 F.3d at 1017 (quoting *Koon,* 518 U.S. at 98, 116 S.Ct. 2035) (citing *Goings,* 200 F.3d at 539).

### 1. Is Flores's case outside the "heartland"? ·

The Eighth Circuit Court of Appeals recognizes an overlap between factors justifying a departure under section 4A1.3 and 5K2.0. *Cf. Nomeland,* 7 F.3d at 747–48 (affirming 5K2.0 departure based on defendant's extensive and violent criminal activity); *Lara–Banda,* 972 F.2d at 960 (affirming upward departure and not distinguishing between district court's departure under sections 4A1 .3 and 5K2.0). *But see United States v. Tropiano,* 50 F.3d 157, 163–65 (2d Cir.1995) (vacating sentence because concerns for recidivism motivated the court's decision to depart under § 5K2.0). The court, therefore, will not rehash its earlier analysis regarding its finding that Flores is an incorrigible criminal unlike any who has come before this court for sentencing. It suffices to say that, based on his record, leniency clearly has not deterred his criminal conduct. Keeping in mind the definition of "incorrigible"—"Incapable of being corrected or reformed"—Flores's criminal record demonstrates that leniency in treatment has not served to deter him, thus illustrating that his behavior is, indeed, incorrigible. In short, Flores's extraordinary incorrigibility and propensity for violence takes his case outside the heartland of cases contemplated by the Sentencing Commission.

In *United States v. Washington,* 109 F.3d 459 (8th Cir.1997), the Eighth Circuit affirmed an upward departure, which the district court based on both of the Guideline provisions at issue here—sections 4A1.3 and 5K2.0. The *Washington* court concluded that a horizontal departure from a criminal history category IV to VI was appropriate under section 4A1.3 because of the defendant's extensive criminal history. *Id.* at 462. In addition, the court affirmed the district court's four-level departure in the defendant's base offense level under Guideline 5K2.0 because the defendant preyed upon his drug addict accomplices by using their names to open fraudulent bank accounts, which was an extraordinary factor "[i]n view of his history as an 'unrepentant, incorrigible recidivist.'" *Id.* at 463 (quoting *Lara–Banda,* 972 F.2d at 960).

In an unpublished opinion, the Eighth Circuit similarly affirmed an upward departure in *United States v. Hungate,* 133 F.3d 923, 1997 WL 787169 (8th Cir.1997) (per curiam) (table op.). Specifically, this court departed upward 21 months pursuant to Guideline 5K2.0 after finding that the Guidelines fail to adequately consider the danger the defendant posed to his ex-wife and child, whom the defendant had threatened on numerous occasions. *Id.* at 923, 1997 WL 787169 at *1.

Similar to this court's finding at Hungate's sentencing, the Guidelines in this

instance fail to take adequate consideration of the danger Flores poses to society. The offense to which Flores pleaded guilty is a drug charge, and the Commission did not anticipate such charges arising out of attempted murder investigations. The violence underlying Flores's offense takes his case out of the heartland of his Guideline range. The violence and callous nature of Flores's related offense, in conjunction with his extensive criminal history as an incorrigible criminal, warrant a vertical upward departure—merely departing from a criminal history category IV to category VI does not adequately reflect either the seriousness of his past criminal conduct or his likelihood of recidivism.

## 2. Extent of vertical departure

█ The next question the court must address is the extent and reasonableness of the vertical departure in this case. In determining an appropriate offense level that more accurately reflects the seriousness of Flores's persistent assaultive behavior, his extensive criminal history, his incorrigibility, and the need for deterrence than does the base level 28 scored in his PSIR, the court is guided by its considerable experience in sentencing criminal defendants. Here, the court finds that a 6 level departure to an adjusted offense level 31 is warranted for all of the following reasons.[7]

In reviewing the extent of a departure, the Eighth Circuit "give[s] great deference to a district court's determination of the amount of departure, as that court has the 'superior feel for the case.'" United States v. Kingston, 249 F.3d 740, 743 (8th Cir.2001) (citing United States v. Otto, 64 F.3d 367, 371 (8th Cir.1995)); accord United States v. Loud Hawk, 245 F.3d 667, 669–70 (8th Cir.2001) ("In evaluating a sentencing court's exercise of discretion, 'we respect the district court's superior feel for the case.'") (quoting United States v. Perkins, 929 F.2d 436, 438 (8th Cir.1991)); United States v. McFarlane, 64 F.3d 1235, 1240 n. 7 (8th Cir.1995) ("[T]he reviewing court gives due regard to the district court's 'superior feel for the case' and does not lightly disturb the district court's decision to depart or the degree of departure.") (internal quotation marks omitted) (citing United States v. Crumb, 902 F.2d 1337, 1339 (8th Cir. 1990)); United States v. Johnson, 56 F.3d 947, 958 (8th Cir.1995) (per curiam) ("[T]he district court's decision on this matter [regarding the extent of departure] is quintessentially a judgment call and we respect the district court's superior 'feel' for the case.") (internal quotation omitted). A reviewing court will not overturn a district court's departure based on the extent of the departure unless the amount is unreasonable. See United States v. Butler, 296 F.3d 721, 724 (8th Cir.2002) ("In ana-

7. Even absent any consideration of a departure pursuant to Guideline 5K2.0, the court would depart vertically because it finds that the 137 month term of imprisonment provided for by a total adjusted offense level of 25 and criminal history category VI is inadequate to reflect the danger Flores represents to the community, his likelihood of recidivism, and the underrepresentation of his criminal history. Thus, pursuant to Guideline 4A1.3 and the Eighth Circuit's holding in Day, the court would reach the same conclusion that Flores should be imprisoned for 188–235 months. See Day, 998 F.2d at 625 ("To im-

pose an upward departure under § 4A1.3, the sentencing court first must proceed along the criminal history axis of the sentencing matrix, comparing the defendant's criminal history with the criminal histories of other offenders in each higher category. If the court reaches the highest criminal history category, Category VI, and concludes that the Guidelines range is still inadequate, it may impose a reasonable sentence above the Category VI range.") (citing Lara–Banda, 972 F.2d at 959–60; United States v. Anderson, 886 F.2d 215, 216 (8th Cir.1989)).

lyzing a district court's departure from the Guidelines, we 'must evaluate, first, whether the circumstances relied upon [by the district court] are sufficiently unusual to warrant departure; second, whether the district court clearly erred in finding the historical facts that could justify departure; and third, whether the sentence was reasonable....' ") (quoting *United States v. Senior,* 935 F.2d 149, 151 (8th Cir.1991)) (internal quotations omitted); *see also United States v. Lewis,* 235 F.3d 394, 396–97 (8th Cir.2000) (per curiam) (affirming 14 level upward departure and holding that the adjustment, while exceptional, was reasonable and not an abuse of discretion); *Sample,* 213 F.3d at 1034 ("We review for abuse of discretion the reasonableness of the extent of an upward departure.") (citing *Johnson,* 56 F.3d at 958); *United States v. Hendricks,* 171 F.3d 1184, 1188 (8th Cir.1999) ("The court must ... explain why the resulting sentence is reasonable.") (citing *United States v. Streeter,* 907 F.2d 781 (8th Cir.1990), *overruled on other grounds, United States v. Wise,* 976 F.2d 393 (8th Cir.1992)).

"Although there 'are no hard and fast rules for determining the extent of an upward departure,' the departure must be 'reasonable in extent' and should be calculated by 'analogy to existing guideline provisions.'" *United States v. Carroll,* 2002 WL 1332795, at *9 (N.D.Ill. June 17, 2002) (quoting *United States v. Horton,* 98 F.3d 313, 317 (7th Cir.1996)); *accord Williams v. United States,* 503 U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992) ("The reasonableness determination looks to the amount and extent of the departure in light of the grounds for departing."); *United States v. Jones,* 278 F.3d 711, 718 (7th Cir.) ("Sentencing courts need not adhere to a mathematical approach in determining the extent of the departure, but rather need only 'link the degree of departure to the structure of the Guidelines and justify the extent of the departure tak-

en.'"), *cert. denied,* — U.S. —, 122 S.Ct. 2373, 153 L.Ed.2d 192 (2002) (quoting *United States v. Simmons,* 215 F.3d 737, 743 (7th Cir.2000)). In this case, the court has identified Flores's extensive criminal history, likelihood of recidivism, and history of assaultive conduct as warranting an upward departure. The court will now turn to an analogy of each of these factors to determine the appropriate departure.

### a. Analogy 1: Extensive criminal history and likelihood of recidivism

In promulgating the Career Offender Guideline, the Commission recognized the need to incapacitate and punish repeat offenders. *See* U.S.S.G. § 4B1.1. Guideline 4B1.1 defines a career offender and assigns to such a defendant an automatic criminal history category VI, as well as a default offense level. *See id.* If a defendant's otherwise applicable offense level is *less than* that prescribed by the Career Offender Guideline, the level given in Guideline 4B1.1 applies. *Id.* In this way, the Guidelines contemplate a more severe sentence for proven repeat offenders. *See id.*

The Guidelines define a career offender as follows:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

*Id.*

The career offender guideline is an appropriate analogy in this case for three reasons. First, but for his age and the

timing of Flores's guilty plea of this federal offense in relation to his plea on the pending terrorism charge in state court, Flores would have qualified as a career offender. That is so because he was seventeen years of age at the time he committed this federal offense, and the career offender guideline states that the defendant must be at least eighteen years of age at the time the instant offense was committed before Guideline 4B1.1 applies.

In addition, Flores would have had two prior felonies for crimes of violence had he not pleaded guilty to the federal charge prior to the time that the terrorism charge in state court matured into a conviction. In short, but for the timing of Flores's plea in this case, his convictions of carrying weapons and terrorism would have resulted in the application of Guideline 4B1.1. *Compare* U.S.S.G. § 4B1.2(1) (defining "crime of violence" as "has an element the use, attempted use, or threatened use of physical force against [another person]"); *id.* § 4B1.2, comment. (n. 2) (" 'Crime of violence' includes ... [o]ther offenses ... where (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another. Under this section, the conduct of which the defendant was convicted is the focus of the inquiry."), *with* IOWA CODE § 724.4(1) (defining "carrying weapons" as "a person who goes armed with a dangerous weapon concealed on or about the person, or who, within the limits of any city, goes armed with a pistol or revolver, or any loaded firearm of any kind, whether concealed or not, or who knowingly carries or transports in a vehicle a pistol or revolver"); IOWA CODE § 708.6 (2001) (defining "terrorism" as

"when the person, with the intent to injure or provoke fear or anger in another, shoots, throws, launches, or discharges a dangerous weapon at, into, or in a building, vehicle, airplane, railroad engine, railroad car, or boat, occupied by another person, or within an assembly of people, and thereby places the occupants or people in reasonable apprehension of serious injury or threatens to commit such an act under circumstances raising a reasonable expectation that the threat will be carried out"); *United States v. Wright,* 957 F.2d 520, 521 (8th Cir.1992) (noting that "[c]ourts must focus their inquiry on the elements of the offense rather than the facts underlying the offense ... [unless] 'that offense can be committed without violence within the meaning of section 4B1.1.' ") (quoting *United States v. Jones,* 932 F.2d 624, 625 (7th Cir.1991)); *United States v. Cornelius,* 931 F.2d 490, 493 (8th Cir.1991) (using factual approach to determine whether possession of firearm by felon is crime of violence under U.S.S.G § 4B1.2(1)(ii)); Flores PSIR, at ¶ 45 (facts underlying carrying weapons conviction involved "threaten[ing] another individual with a handgun at a SIDS gas station"); Flores PSIR, at ¶ 63 (facts underlying terrorism charge involved the shooting and attempted murder of another individual).

Second, an extensive criminal history, such as Flores's, typifies a career offender's proclivity for recidivism. And third, there is a striking similarity between a career offender, who has proven himself or herself to be an incorrigible recidivist, and a defendant such as Flores, whose criminal conduct indicates a high likelihood of becoming an incorrigible adult recidivist/career offender. While Flores does not technically qualify as a "career offender," his persistent criminal behavior is certainly the type to which this guideline provision was intended to apply.

Were Flores to qualify as a career offender, Guideline 4B1.1 would assign him a total offense level of 37 because the statutory maximum for his crime is life. *See id.* After receiving acceptance of responsibility, his adjusted offense level would be 34, and the resulting guideline range would be 262 to 327 months. In this case, the court has departed to an adjusted offense level 31, which results in a guideline range of 188–235 months, which comports with the analogous criminal offender range.

### b. Analogy 2: History of assaultive conduct

In addition to recognizing the distinct need for more severe punishment with respect to career offenders, the Guidelines consistently distinguish between violent and non-violent crimes, as well as crimes that result in injury, and assign enhancements to these crimes. *See; e.g.,* U.S.S.G. §§ 2A2.1 (Assault with Intent to Commit Murder; Attempted Murder), 2D2.3 (Operating or Directing the Operation of a Common Carrier Under the Influence of Alcohol or Drugs), 2K1.5 (Possessing Dangerous Weapons or Materials While Boarding or Aboard an Aircraft), 2L1.1 (Smuggling, Transporting, or Harboring an Unlawful Alien). More specifically, Guideline 2D2.3 assigns a base offense level of 21 to a crime of operating a common carrier while under the influence of alcohol or drugs when "serious bodily injury resulted," but assigns only a level 13 in the absence of injuries. *Id.* § 2D2.3. Similarly, Guideline 2K1.5 enhances a defendant's base offense level by 15 when a defendant is convicted of the crime of boarding an aircraft while possessing dangerous weapons or materials when the offense is committed "willfully and without regard for the safety of human life, or with reckless disregard for the safety of human life." *Id.* § 2K1.5(b)(1). Likewise, Guideline 2L1.1 provides for the enhancement of the base offense level for smuggling, transporting, or harboring an unlawful alien when a firearm was used, brandished, possessed, or discharged. *Id.* § 2L1.1(b)(4).

A significant enhancement in this case is merited not least because the structure of the Guidelines indicates the Commission's intent to treat more harshly those crimes that are violent and that result in injury. In Flores's case, his adjusted offense level as scored in the PSIR is 25, but that score does not contemplate the attempted murder out of which his drug charge sprung. He was, in short, sentenced for a non-violent crime when, in fact, his drug charge arose out of the investigation of the shooting and attempted murder of another individual.[8] The Guidelines themselves increase by 4 the total offense level of attempted murder when the victim sustained permanent or life-threatening injuries, and by 2 when the victim sustained serious bodily injuries. *Id.* § 2A2.1(b)(2). Thus, even within the guideline associated with an inherently violent crime, the Guidelines provide for an enhancement based upon the injuries sustained by the victim.

In Flores's case, his entire criminal history illustrates his callous indifference toward human life and safety. Based on an analogy with these aforementioned guideline provisions an increase of 6 offense levels is reasonable. The Guidelines provide for increases ranging from 2 levels, upward to 15 levels, when violence and injuries are involved. An increase of 6 is well within the enhancements provided for

---

8. While the defendant argued at sentencing that there is no relationship between the attempted murder in April of 2001 and the instant drug offense, this court disagrees. The Eighth Circuit has repeatedly recognized that "[f]irearms are the tools of the drug trade providing protection and intimidation." *United States v. Linson,* 276 F.3d 1017, 1019 (8th Cir.2002) (citing *United States v. Rohwedder,* 243 F.3d 423, 428 (8th Cir.2001)).

by the Commission and that pervade the Guidelines for violent crimes and injuries. What is more, Flores's resulting guideline range is 188–235 months, which is well within the statutory maximum for his offense—life.

### III. CONCLUSION

Considering the number, severity, and circumstances of Flores's criminal history, his incorrigible nature, and the fact he is a danger to the community, the court finds that a substantial upward departure is merited in this case.[9] The court hereby imposes a term of imprisonment of 235 months, having departed horizontally pursuant to Guideline 4A1.3 and vertically pursuant to both 4A1.3 and 5K2.0. Furthermore, the court finds that in light of the identified factors that take Flores's case outside the heartland of cases antici-

9. While the undersigned shares many of the views expressed by Senior Circuit Judge Myron H. Bright in several of his concurrences and dissents in which he condemns the harsh injustices that application the Federal Sentencing Guidelines imposes, the court finds that this case presents an exception and that a departure is entirely justified by Flores's demonstrated propensity for violence, his recidivist nature, and the need to protect society. *See, e.g., United States v. Sweesy*, 272 F.3d 581, 583–84 (8th Cir.2001) (Bright, J., dissenting) (noting that "[j]udges should take into account that many guideline drug sentences are often heavier than is warranted by the nature of the crime. This is where a district judge's discretion becomes important and where the judge often should take advantage of the provisions that permit reducing sentences under the guidelines."); *United States v. Jones*, 145 F.3d 959, 966 (8th Cir. 1998) (Bright, J., dissenting in part and concurring in part) ("The sentence of Jones, a man with the mind of a child, to thirty years of incarceration makes a mockery out of the phrase, 'Equal Justice Under the Law.' In this case, the lowest person on the totem pole, a mere street-level seller with an I.Q. of fifty-three received a heavier sentence than the mastermind of the conspiracy and the conspiracy's primary drug supplier. What kind of system could produce such a result? This case provides yet another example of how rigid sentencing guidelines and the mandatory minimums associated with drug cases make an unfair 'criminal' system.") (footnote omitted); *Montanye v. United States*, 77 F.3d 226, 233 (8th Cir.1996) (Bright, J., dissenting) ("By any ordinary measure outside the guidelines, I would think this sentence would be considered draconian, unnecessarily harsh and unreasonable."); *United States v. Hiveley*, 61 F.3d 1358, 1363, 1365 (8th Cir.1995) (Bright, J., concurring) ("[U]nwise sentencing policies which put men and women in prison for years, not only ruin lives ... but also drain the American taxpayers.... [It is] time to call a halt to the unnecessary and expensive cost of putting people in prison for a long time based on the mistaken notion that such an effort will win 'The War on Drugs'.... The public needs to know that unnecessary, harsh and unreasonable drug sentences serve to waste billions of dollars without doing much good for society. We have an unreasonable system."); *United States v. Smiley*, 997 F.2d 475, 483 (8th Cir.1993) (Bright, J., dissenting) (suggesting that sentences imposed under the Guidelines where no rules of evidence apply and where sentencing judges often summarily approve probation officer recommendations seem to come from an *Alice in Wonderland* world where up is down and down is up); *United States v. Galloway*, 976 F.2d 414, 438 (8th Cir.1992) (Bright, J., dissenting) (comparing sentences imposed under the relevant conduct provisions of the Guidelines to an *Alice in Wonderland* world in which words lose their real meaning and down is up and up is down); *United States v. England*, 966 F.2d 403, 411 (8th Cir.1992) (Bright, J., concurring) ("In too many instances, the sentences directed by the guidelines waste the lives of men and women.... *It is time for a re-evaluation and change.*"); *United States v. Simmons*, 964 F.2d 763, 778 (8th Cir.1992) (Bright, J.) (commenting that "[t]his case and other drug convictions like it demonstrate that, under the Sentencing Guidelines, district judges are obligated to sentence first-time drug offenders to extremely long prison terms under evidence which is often haphazardly produced and considered without regard to traditional rules of evidence. The guidelines procedure has chosen to bypass adherence to rules of evidence which @have developed over hundreds of years in the common law tradition to assure reliability in factfinding.")

pated by the Commission, the extent of the departure is both reasonable and just.[10]

**IT IS SO ORDERED.**

---

**10.** In addition to being a youthful incorrigible criminal recidivist, but for his poor marksmanship on April 28, 2001, Flores would most likely be serving a mandatory life sentence for first degree murder.