**UNITED STATES of America, Appellee,**

v.

**Edward Dean COOK, Appellant.**

**No. 92–1241.**

United States Court of Appeals, Eighth Circuit.

Submitted June 9, 1992.

Decided Aug. 5, 1992.

Rehearing and Rehearing En Banc Denied Sept. 14, 1992.

Rehearing Denied Sept. 15, 1992.

Virginia G. Villa, Minneapolis, Minn., argued (Daniel M. Scott and Virginia G. Villa, on brief), for appellant.

Richard George Morgan, Minneapolis, argued (Thomas B. Heffelfinger and Richard G. Morgan, on brief), for appellee.

Before WOLLMAN, Circuit Judge, and BRIGHT and ROSS, Senior Circuit Judges.

DONALD R. ROSS, Senior Circuit Judge.

Edward Dean Cook appeals his conviction and sentence on two counts of assaulting a federal officer with a dangerous weapon, in violation of 18 U.S.C. § 111. For reversal, Cook asserts that the evidence was insufficient to support a conviction on either count and that the district court erred in making an upward departure under the Sentencing Guidelines. We affirm.

I.

On June 29, 1991, just inside the southern border of the Red Lake Indian Reservation in Minnesota, Officer Ruth Wittner, a Minnesota State Patrol officer, observed a vehicle stopped on the shoulder of Highway 89 with its car door opened into the traffic lane and Cook bent out of the door. Upon inquiry, Cook told the officer that his blood pressure was acting up. The officer, noticing that Cook was an American Indian, radioed the Bureau of Indian Affairs Law Enforcement Center (BIA) on the reservation for assistance. As the officer made her report, a blue car pulled in front of Cook's car, its occupants spoke with Cook, and the car drove away. Cook also drove away.

Shortly thereafter, Officer Wittner again saw Cook's car and the same blue car on the shoulder of Highway 89 just outside the reservation border. As the officer's patrol car approached, Cook's car made a U-turn and headed back to the reservation. Observing a beer can outside the driver's door of the blue car, Officer Wittner ordered the driver of the blue car to remain stopped. As the officer approached the blue car, the driver revved the car's engine and drove straight at her, forcing her to jump out of the way.

Officer Wittner testified that Cook's car returned to the scene and she ordered him to pull over. Instead, Cook made a U-turn and drove straight at her, forcing her to jump out of the way. Cook's vehicle then headed back to the reservation.

Shortly after Officer Wittner reported these incidents to the BIA Center, Cook led Sergeant Daryl Lussier, a BIA officer, and Officer Wittner on a high speed chase through sections of the reservation. The chase ended in a residential area where many of Cook's friends and relatives lived. Because Cook and Sgt. Lussier had driven through the yards of several residents, a crowd of approximately 20 people gathered at the scene. As Sgt. Lussier was getting out of his car, Cook allegedly hit Sgt. Lussier with a tire jack stand and fled the scene.

Following the June 29, 1991 incident, a federal warrant was issued for Cook's arrest. Approximately one month later, on August 2, 1991, Cook was spotted on the reservation. Again, he resisted arrest by leading BIA officers on a high speed chase through the reservation. That chase ended on a dirt road, where Cook apparently got his vehicle stuck in the sand. As the first BIA officer, Dwight Bellanger, got out of his vehicle, Cook allegedly took a rifle equipped with a scope out of his car and repeatedly took aim at the officer, forcing him to take cover behind the door of his squad car. When the second BIA officer,

Julius Schoenborn, arrived on the scene, Cook walked with the rifle around a corner of the road and disappeared into a wooded area.

On August 12, 1991, Cook turned himself over to federal authorities. He was charged in a superseding indictment with two counts of assaulting a federal officer (Count I—assault on a BIA officer with a metal tire jack stand; Count II—assault on or interference with a BIA officer with a rifle).

At trial, the facts surrounding the alleged June 29, 1991 assault were in dispute. Officer Wittner testified that as Sgt. Lussier was getting out of his car with his baton drawn, Cook walked towards him waving a pipe in the air (later identified as a metal tire jack stand), which he then brought down on Sgt. Lussier. Officer Wittner attempted to leave her car to assist Sgt. Lussier, but a man held her captive by blocking her car door. She testified that when Sgt. Lussier drew his revolver, Cook backed away and ran into his aunt's house. Officer Wittner also testified that at that point the crowd became hostile, throwing beer cans at Sgt. Lussier and yelling at both officers.

At trial, Sgt. Lussier gave a similar account of the June 29, 1991 assault. He also testified that, in addition to the scar on his arm caused by the tire jack stand, he suffered a mouth injury during the fight with Cook and eventually lost two teeth. The jury was shown a photograph of the bruise on Sgt. Lussier's arm, which showed an outline of ridges consistent with ridges commonly found on a tire jack stand.

At trial, Cook denied striking Sgt. Lussier with a tire jack stand. He testified that he only acted in self defense after Sgt. Lussier ran at him swinging his baton. He admitted that he led the officers on a high speed chase, and that prior to the chase he had been drinking. He also admitted that he resisted Sgt. Lussier's attempt to arrest him, stating, "I resisted him. I will always resist him."

Relatives and friends who witnessed the scuffle testified in Cook's defense. Although the specific details of the scuffle varied from witness to witness, many of them testified that they did not see Cook with a tire iron, and that they saw Sgt. Lussier go after Cook, put him into a headlock, and hit Cook in the head with his baton.

With regard to the alleged August 2, 1991 assault, Officer Bellanger testified that after the chase ended on the dirt road, Cook repeatedly took aim at him with a rifle equipped with a scope. Officer Schoenborn also testified that when he arrived on the scene he observed Cook walking away from the scene with a rifle in his hand.

Following a three-day jury trial, Cook was found guilty on both assault counts. At sentencing, the district court[1] granted the government's motion for upward departure and sentenced Cook to 120 months imprisonment on each count, both sentences to run concurrently with each other. Cook now appeals.

## II.

■ . Cook argues that the evidence was insufficient to sustain the jury's finding of guilt on either Count I or Count II. With regard to Count I, Cook argues that the evidence was insufficient to prove that he wielded a tire jack stand on June 29, 1991. He relies on the testimony of his relatives and friends, who testified that they did not see him with a metal tire jack stand during the scuffle. Cook speculates that the officer's injuries were caused by beer cans thrown by the crowd after Sgt. Lussier drew his weapon.

With regard to the August 2, 1991 incident charged in Count II, Cook argues that the evidence was insufficient to prove that he threatened Officer Bellanger with a rifle or that he carried a rifle as he left the scene, because the officers' vision was sub-

---

**1.** The Honorable Robert G. Renner, Senior United States District Judge for the District of Minnesota.

stantially obscured by road dust raised during the chase.

In reviewing Cook's sufficiency of the evidence claims, we must view the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences. *United States v. Rankin*, 902 F.2d 1344, 1345 (8th Cir.1990). We can reverse his conviction only if we conclude that a reasonable jury could not have found him guilty beyond a reasonable doubt. *United States v. Shurn*, 849 F.2d 1090, 1093 (8th Cir.1988). Having reviewed the entire trial transcript, we believe that a reasonable jury could have found Cook guilty of assaulting a federal officer with a dangerous weapon on June 29, 1991, and on August 2, 1991, as charged. The jury, which is charged with weighing the credibility of the witnesses, *United States v. Rankin, supra*, 902 F.2d at 1346, apparently believed the officers' version of the June 29, 1991 assault (Count I). Its determination is not unreasonable in light of the photograph of the marks on Sgt. Lussier's arm. The jury also apparently believed the officers' testimony that, despite the presence of road dust, they saw Cook take aim at Officer Bellanger and later walk away from the scene with a rifle on August 2, 1991.

### III.

■ Cook also argues that the district court erred in granting the government's motion for upward departure at sentencing. The government requested the upward departure pursuant to U.S.S.G. § 4A1.3,[2] based upon the likelihood of future criminal misconduct by Cook. The government specifically focused upon paragraph 12 of the pre-sentence report, in which Cook's probation officer reported that "[Cook] stated that the day he gets out of prison, a BIA officer is going to die. He explained that he is going to shoot the first cop that pulls him over 'right in the face, that's how cold-blooded I'll be.'"

The district court granted the government's motion, and departed upwards from a total offense level of 26 to 28. The district court based its decision upon the nature of the offenses and Cook's failure to conform to the rules and regulations of society. The district court called Cook "a violent person," made reference to Cook's history of "violent episodes," but indicated that for sentencing purposes it was not considering Cook's previous tribal convictions.[3]

■ When reviewing departures from the Guidelines, this court considers three factors: (1) whether, as a matter of law, the circumstances relied upon by the district court for the departure are sufficiently unusual in kind or degree to warrant departure; (2) whether, as a question of fact, the circumstances justifying departure actually exist; and (3) whether or not the sentence is reasonable. *United States v. Thomas*, 914 F.2d 139, 143 (8th Cir.1990).

Cook challenges his sentence under the first prong of this test, arguing that the circumstances relied upon by the district court for departure were not sufficiently unusual in kind or degree to warrant departure. He argues that the "nature of the offenses" and his "failure to abide by the rules and regulations of society," cited by the district court, are factors which already were considered in the calculation

---

**2.** U.S.S.G. § 4A1.3 provides in part:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable Guideline range.
>
> \* \* \* \* \* \*
>
> A departure under this provision is warranted when the criminal history category significantly under-represents the seriousness of the

defendant's criminal history or the likelihood that the defendant will commit further crimes.

**3.** Cook's presentence report revealed two prior convictions, other than tribal convictions, for assault on a police officer. One of those convictions was in connection with a high speed chase from state police officers in 1977. The other was in connection with an attempted forcible takeover of the Red Lake Law Enforcement Center by Cook and four other armed individuals in 1979.

of his sentence under the Guidelines. He also claims that the threatening statements he made to his probation officer were nothing more than "high-flown rhetoric," and that the use of such statements as the basis for an upward departure would undermine the Guideline's goal to treat like offenders alike. We disagree.

We have previously recognized that the district court may make an upward departure where there is evidence of obvious incorrigibility and a history of prior convictions for the same type of offense. *See United States v. Carey*, 898 F.2d 642, 645–46 (8th Cir.1990). In the present case, the district court clearly was permitted to consider Cook's significant history of violent episodes, use of weapons, and continuing pattern of disrespect for, flight from and assault upon police officers. The district court was also permitted to consider Cook's capacity for future violence and recidivism, based upon the threatening statements he made to his probation officer. On this record, we cannot say that the circumstances relied upon by the district court for departure were not sufficiently unusual in kind or degree to warrant the upward departure.

### IV.

Finally, Cook argues that the district court erred in denying his motion to dismiss Count II of the superseding indictment on the grounds that he had not been arraigned on that count. We disagree. An arraignment is not required where the defendant has had sufficient notice of the accusation and an adequate opportunity to defend himself at trial. *See Garland v. Washington*, 232 U.S. 642, 645, 34 S.Ct. 456, 457, 58 L.Ed. 772 (1914); *United States v. Coffman*, 567 F.2d 960, 961 (10th Cir.1977). In this case, Cook received notice of the charge in Count II well before trial and had sufficient opportunity to defend himself on that count.

### V.

Accordingly, we affirm Cook's conviction and sentence on Counts I and II for as-

saulting a federal officer with a dangerous weapon.