2003 VT 13

## State of Vermont v. Terry M. Cadorette

[826 A.2d 101]

No. 01-159

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed February 7, 2003
Motion for Reargument Denied April 30, 2003

*Robert Simpson,* Chittenden County State's Attorney, and *Pamela Hall Johnson,* Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*David J. Williams* of *Sleigh & Williams,* St. Johnsbury, for Defendant-Appellant.

¶ 1. **Johnson, J.** Defendant Terry Cadorette appeals his conviction for sexual assault, in violation of 13 V.S.A. § 3252(a)(1), arguing that it was reversible error for the trial court to fail to arraign him on a charge carrying a possible life sentence, and over his objection on this issue, to put him to trial within six days after he learned of the charges at a jury draw. We agree and reverse.[1]

¶ 2. On January 2, 2001, defendant was transported from jail where he was serving time on an earlier conviction. He arrived to find his lawyer involved in a jury draw for a trial on a charge that had been dismissed two years earlier.[2] He told his lawyer that he wanted to speak to the court. Defendant protested to the court that he had not been rearraigned on the charge, that he had thought that the charge had been dismissed due to lack of evidence, that he had never met with his court-appointed attorney to discuss and develop a defense to the accusation, and that his attorney was not prepared to try the matter. Indeed, he claimed he had not seen his lawyer for seven months. The trial judge dismissed defendant's objection with the words "we're not going to go into a discussion about ... every possible legal issue, Mr. Cadorette." Defendant then inquired, "[T]hat's not my right to get into a legal issue regarding my life, sir?" The trial judge reminded defendant that he had an attorney to take care of his legal rights, that there was no need for defendant to be present at an arraignment, that a not guilty plea had been entered, and that no rights had been waived. The transcript of the alleged arraignment hearing reveals, however, that no arraignment had been held and no pro forma plea had been entered by the court. The court elected to proceed with the trial, despite assigned counsel's virtual admission that he had barely seen

---

[1] Defendant raises two other issues: (1) the trial court erred in admitting testimony from an arresting officer that revealed consistency in the victim's statements and (2) he was tried before a biased judge because the trial court failed to grant or refer his motion for judicial disqualification. In view of our disposition, it is unnecessary to reach the first issue and the second issue is moot.

[2] In a motion for injunction to stop his trial from proceeding, defendant alleges that he first learned by mail on December 20, 2000 that a jury draw had been scheduled in the case.

defendant in seven months. Counsel, Harley Brown, claimed to have seen defendant once in that time, but also claimed that he was ready for trial. The trial was scheduled for January 8, six days later. Defendant was convicted and sentenced to thirty-five years to life.

¶ 3.   The history prior to the jury draw shows that the present charges had been filed previously and dismissed without prejudice on January 4, 1999 because the complaining witness had left the area. Defendant had been represented at that time by private counsel, who was also representing him on other charges. On January 10, 1999, private counsel was dismissed by the court upon defendant's allegation that counsel had been completely unavailable to him. The state's attorney later acknowledged that private counsel had done no discovery on the case. Defendant was directed to apply for a public defender. Harley Brown was assigned to represent defendant on different charges because the charge involved in this case was *not* pending at the time counsel was assigned. On May 5, 2000, the present charges were refiled, and although the docket sheet in the refiled charges shows that the arraignment was set for the same day, defendant was not transported to court. In fact, the hearing scheduled for that day was for an entirely different charge. Harley Brown appeared for defendant on the other charge. The prosecutor, however, indicated a preference for going forward on the newly refiled charges, stating that defendant could be arraigned at a "future status conference." The trial court acknowledged that "first we have to have an arraignment," but the court wanted the discovery clock to start that day. The court's plan was to have the parties proceed with discovery and arraign defendant "the next time Mr. Cadorette comes to court." But no status conference or any other event brought defendant to court until the jury draw. Moreover, despite the discovery clock having begun to run on May 5, 2000, Harley Brown did not file his appearance in this case until July 7, 2000. This meant that defendant's right to exercise discovery began on May 5, 2000, although he did not know it. Nor did he know that he should begin to monitor his lawyer's preparation for the eventual trial. In fact, no other docket sheet entry is made until September 22, 2000, which starts a series of notations on rescheduling jury draws until one is actually held on January 2, 2001, and trial is commenced on January 8, 2001.

■ ¶ 4.   One of the most fundamental principles of our criminal justice system is that a person charged with a crime must be notified of the charges against him. See, e.g., *Rogers v. Tennessee*, 532 U.S. 451, 459 (2001) (notice is one of the core due process concepts); *Hamilton v. Alabama*, 368 U.S. 52, 54 n.4 (1961) (arraignment, where defendant is informed of charge, is a "sine qua non" to trial process). This does not

mean notice may be given by an appointed attorney or the state's attorney. This does not mean notice may be considered given if the charges have been brought previously and dismissed without prejudice. Notice means official, on the record notice as required by our Rules of Criminal Procedure 5 and 10. Rule 5 requires that defendant be brought before the court and read his rights, which includes the charges against him, his right to have counsel appointed, his right not to make a statement or answer any questions, his right to discovery, and his right to pretrial release. V.R.Cr.P. 5(d). If there is no challenge to probable cause, an arraignment date is set, or a plea may be taken at that time. Rule 10 provides:

> Arraignment shall be conducted in open court and shall consist of reading the indictment or information to the defendant, unless he intelligently waives such reading, and calling on him to plead thereto.

V.R.Cr.P. 10.

¶ 5. Rule 43(a) requires the presence of the defendant at the arraignment, which is a critical stage of the proceedings at which counsel must be provided, and at which defendant enters his plea. V.R.Cr.P. 43(a). Reporter's Notes, V.R.Cr.P. 10, at 46; *Hamilton*, 368 U.S. at 54-55 (finding that in Alabama arraignment is a critical stage in a criminal proceeding because it affects the outcome of trial and, as a result of failure to make certain pleas, available defenses may be "irretrievably lost"); *White v. Maryland*, 373 U.S. 59, 60 (1963) (making same critical stage finding for preliminary hearings held prior to formal arraignment in Maryland). As we stated in *State v. Bruyette*, 158 Vt. 21, 35, 604 A.2d 1270, 1277 (1992), the central purpose of arraignment is to ensure that defendant understands the nature of the charges so that he can prepare a defense.

¶ 6. Notwithstanding our rules, things go wrong and sometimes the formal arraignment process is overlooked, as it was in this case. The question is what to do about it.[3] Defendant argues that the failure to arraign him is a structural error requiring automatic reversal, but the standard for reversal in these circumstances is different. Reversal is warranted only if the defendant did not have actual notice of the charges

---

[3] The remedy for defendant's problem was quite simple. The trial judge at the jury draw could have arraigned defendant on the spot and set a new trial and discovery schedule. Trial could have proceeded within a reasonable time, rather than six days after formal notice was given. Under that scenario, no error for late arraignment would have been cognizable on appeal.

and an adequate opportunity to defend. *Garland v. Washington*, 232 U.S. 642, 645 (1914). In *United States v. Correa-Ventura*, 6 F.3d 1070 (5th Cir. 1993), Correa-Ventura was arraigned on three counts of an indictment and pled not guilty. Thereafter he filed a motion to dismiss one of the counts for failure to allege knowledge as an essential element of one of the crimes. The government responded by filing a superseding indictment eleven days prior to trial. It was virtually identical to the original indictment except for the additional allegation of the defendant's knowing employment of a firearm in connection with drug crimes. The defendant was not rearraigned on the superseding indictment and appealed his conviction on that ground. The defendant claimed he was prejudiced because he intended to plead guilty to possession of firearms, and his admission of guilt to the firearms charge at trial prejudiced his defense on the drug charges. The court disagreed because the defendant had pled not guilty to all charges at his arraignment and had every opportunity prior to trial to change that plea, a period of some eight months. *Id.* at 1074. Therefore, the lack of arraignment on the superseding indictment, which had provided notice of the charges against defendant, had not resulted in prejudice to him. *Id.* Similarly, in *United States v. Cook*, 972 F.2d 218 (8th Cir. 1992), *cert. denied*, 506 U.S. 1058 (1993), the defendant resisted arrest on a federal warrant, which resulted in a superseding indictment on which he was not arraigned. He was convicted after trial, and although insufficient facts of the first arraignment are given in the decision, the appellate court held that the defendant had received notice of the superseding indictment well before trial and had sufficient opportunity to defend himself in court. *Id.* at 222. In *State v. Winters*, 414 N.W.2d 1 (S.D. 1987), the record was insufficient as to whether the defendant had been arraigned on an indictment for rape, but the court found that the defendant knew months before the trial that he was *charged* with the rape of the victim. Pretrial motions, including motions to withdraw blood samples from the defendant, as well as motion hearings showed unequivocally that the defendant and his attorney had notice of the charges. Moreover, the defendant called eleven witnesses at his trial. Therefore, the court held that, under the *Garland* test, the defendant had notice and an adequate opportunity to defend the charges. *Id.* at 2-3.

▮ ¶ 7. Although we do not agree that failure to arraign is a structural error, under the *Garland* standard, defendant's conviction must be reversed because there is sufficient evidence in this record to infer prejudice from the failure to arraign. These are the facts that compel this result. The charges against defendant were originally filed on August 12, 1997. When the time came for the trial, the State was unable to locate the

complaining witness. The State chose not to proceed without their main witness and moved to dismiss the charges without prejudice in January of 1999. Thus, this is not a situation where defendant moved to dismiss to correct some deficiency in the charges or a failure to prosecute, as in *Correa-Ventura*. The State dismissed its own charges. Therefore, the only way defendant would have learned that he was actually going to be held to account for this crime was either through arraignment, which indisputably did not occur, or through consultation with his appointed attorney in the course of preparation for the trial, which the record also shows did not occur. Appointed counsel did not file his appearance until two months after the discovery clock began to run and admitted to the court at jury draw that he had not seen defendant except once in the seven months since the charges had been refiled, a representation disputed by defendant. Because counsel was representing defendant on other charges, of which defendant was aware, we cannot know whether defendant received notice about the refiled charges in this matter, but it is a more than reasonable inference that no defense was being developed during that time if defense counsel was not consulting his client.

■ ¶ 8. Contrasting with the attorney's ambiguous claim of contact with defendant, we also have defendant's prompt protest, at the first opportunity, to the trial court that he did not know of the charges and his protestations that he could not possibly be prepared for the trial because he had not seen his lawyer for seven months. Nor does the record show any discovery or pretrial proceedings, as in *Winters*, that would indicate knowledge and an adequate opportunity to prepare. Finally, defendant's assertions of lack of notice and prejudice are corroborated by his attempt to initiate plea bargaining at the jury draw. The transcript shows that defendant, through his counsel, approached the bench and suggested a possible sentence of ten to twenty years. The court expressed reluctance to get involved "at the very last minute." The state's attorney responded that she had offered such a plea bargain earlier, and that it had been rejected by defense counsel, and that she had just told defendant's counsel that, after trial, she would be looking for a longer sentence. Literally on the eve of trial, defendant could not have been in a worse position for attempting negotiation of a sentence. Absent any evidence that defendant had adequate notice of his impending trial, a presumption of prejudice is warranted.

¶ 9. The State claims that defendant did not state explicitly that he had not been informed of the charges against him and that defense counsel did not adequately object to the failure to hold the arraignment. Defendant's own protest to the court, however, shows that he had not been so

informed. Defendant raised the lack of notice issue at every opportunity. He spoke directly to the court at the jury draw. When he could not get the attention of the trial judge, he filed a motion in superior court to disqualify the trial judge in an attempt to get another judge to listen to his complaint. Defendant raised these issues with the trial court again before the trial began. Now, he has assigned the lack of arraignment as error on direct appeal, claiming exactly what he claimed below: that he did not know the charges had been refiled and he did not have sufficient time to prepare for trial. Defendant's objection was plain, and there is no record evidence below to contradict his assertions.

¶ 10. More than notice of the charges is at stake in this case. It is also defendant's right to participate in his own defense that conformance with V.R.Cr.P. 5, 10 and 43 ensures. Given the weight of the evidence against defendant, it may well be that he would have been convicted following a fair trial. But whatever the evidence, our criminal justice system guarantees a person accused of a crime, especially a crime carrying a penalty as severe as life imprisonment, a fair opportunity to be heard.

*Reversed and remanded.*

¶ 11. **Morse, J.,** dissenting. The Court bases its reversal on the assumption that since defendant and his counsel learned of the charges "within six days" before the jury draw, they were not ready to go to trial.

¶ 12. In fact, the record does not support that conclusion. Defendant, who had been represented throughout, knew of the charges for over two years and *had been* arraigned on them. A second arraignment, after the charges had been dismissed without prejudice and then reinstated when the principal witness was available, would have accomplished nothing the first one did not.

¶ 13. The Court is obviously suspicious that defendant's trial counsel was incompetent and rendered ineffective assistance to his defense. Yet the record discloses no factual determination that counsel did anything wrong or that any failing of counsel made any difference to the outcome. The Court's recitation of "facts" are mostly allegations by defendant, which were never put to the test of litigation. While this case may provide a basis for a post-conviction-relief proceeding, the Court has dispensed with one because it "infers" without any fact finding at the trial level that the lack of arraignment was prejudicial.

¶ 14. At this juncture on this record we have no way of knowing what happened during the course of the prosecution and defense. The Court assumes defendant was woefully defended based on colloquies outside the

context of a fact-finding hearing. In fact, we know nothing about the fairness of the trial itself that produced the conviction.

¶ 15.   In short, I believe this Court has jumped the gun and denied the State an attempt to defend against the ineffective assistance of counsel claims alleged by defendant. No testimony under oath was given by anyone on this issue. If a post-conviction proceeding had been allowed to unfold, there may, or may not, have been the need for second trial.

¶ 16.   I would affirm.[4] I am authorized to state that Chief Justice Amostoy joins in this dissent.

---

[4] The defendant's remaining claims are without merit. Given the outcome of this appeal, there is no need to discuss them in this dissent.