# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: SEPTEMBER 18, 2008
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2007-SC-000147-MR

DATE 10-9-08 ExPCount P.C.

RUSSELL LEE JONES                                                                APPELLANT

|   | ON APPEAL FROM HARLAN CIRCUIT COURT |
|---|---|
| V. | HONORABLE RON JOHNSON, JUDGE |
|   | NO. 06-CR-00094 |

COMMONWEALTH OF KENTUCKY                                              APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Russell Lee Jones[1] appeals as a matter of right from a November 20, 2006

Judgment of the Harlan Circuit Court convicting him of trafficking in a controlled

substance (1st Degree) and being a persistent felony offender (PFO) (2nd Degree). The

Commonwealth alleged that on January 11, 2006, in Harlan County, Kentucky, Jones

sold two halves of a 40 milligram Oxycodone tablet to a confidential informant during a

controlled drug buy. Following his trial, the jury returned a guilty verdict as to both

charges and the trial court subsequently sentenced Jones to a total of twenty years

imprisonment. On appeal, Jones contends that the trial court erred by (1) failing to

grant his motion for a new trial after discovering that he had not been arraigned as to

---

[1]Although both Jones and the Commonwealth have styled this appeal as being brought by "Russel Lee Jones," the appellant's name as reflected in the trial record and throughout the appellant's brief is spelled "Russell." Thus, in order to be consistent, we are using the same spelling as seen in the trial record.

either charge; (2) denying his request for a new lawyer or for the opportunity to hire a new lawyer; (3) admitting the confidential informant's pretrial identification of Jones from an unduly suggestive photo array; (4) instructing the jury on theories that were not supported by evidence and that violated his right to a unanimous verdict; and (5) allowing the Commonwealth to impeach one of his witnesses on a collateral matter.

Although the trial court never formally arraigned Jones on these charges and Jones informed the trial court of this fact prior to trial, because Jones was fully prepared to defend against the charges, he was not prejudiced by his lack of arraignment. Consequently, a new trial is not warranted on that basis. Jones's other claims of error are either not preserved for appellate review or do not constitute grounds for a reversal. Thus, we affirm Jones's November 20, 2006 Judgment and Sentence.

## RELEVANT FACTS

Prior to the confidential informant's interaction with Russell Jones, she had been participating in controlled drug buys supervised by Detective Keith Saylor of the Kentucky State Police for approximately six months. On the morning of January 11, 2006, the informant called Clyde Daniels in order to purchase drugs. The informant then met with Detective Saylor, at which point he searched her person and her vehicle, equipped her with a recording device, and gave her $60 to purchase the drugs. The informant testified at trial that after meeting with Detective Saylor, she began driving toward Cawood, Kentucky, to meet Daniels. The two eventually met at a convenience store in Cawood. According to the confidential informant's testimony, Daniels told her to park her car, get into his truck, and then he would find a pill for her. As they both sat in Daniels's truck, however, Russell Jones approached the vehicle and asked them

2

what they needed. Daniels replied that the informant needed "a 40." Jones then got into Daniels's truck and the three drove away from the store in order to complete the sale. Once they reached an underpass away from town, Jones sold the informant two halves of a 40 milligram Oxycodone tablet for $60. Following the sale, the informant and Daniels took Jones back to the convenience store. Daniels testified at trial that after dropping Jones off at the store, he and the informant drove to a secluded area where they both ingested Oxycodone. However, the informant testified that it was only Daniels who finished "shooting up" before he returned her to her car, which was parked at the convenience store. Approximately an hour after she had left Detective Saylor, the confidential informant returned to their meeting point, produced two halves of Oxycodone, and told Saylor that Russell Jones had sold her the drugs. She also gave Detective Saylor a description of Jones, stating that he was older, had long gray hair, and had a cross-like tattoo on the left side of his face.

Three months later, on April 4, 2006, Detective Saylor asked the confidential informant to come to the Kentucky State Police (KSP) post in order to look at a photo array. Detective Saylor used the informant's previous descriptions of people from whom she bought drugs, partial names the informant had given him, and his own knowledge of people who he believed were involved in dealing drugs in Harlan County to compile a stack of over twenty photographs of potential suspects. When the informant arrived at the KSP post, Saylor presented the confidential informant with the photo array. The informant recognized approximately seventeen of the individuals in the photographs as drug dealers. Specifically, the informant identified Jones as being the man from whom she had bought Oxycodone on January 11, 2006, and recalled that

3

Clyde Daniels was also involved in the drug transaction that day. Following an indictment by the Harlan County Grand Jury on May 15, 2006, an arrest warrant was issued for Jones on May 16, 2006. The next day, Jones was arrested in Cawood, Kentucky.

On the morning of June 7, 2006, Jones's jury trial began. Jones's defense at trial was that he was not the same "Russell" who sold the informant Oxycodone. Jones called as a witness on his behalf Clyde Daniels, who testified in court that he had met Jones for the first time when they were in jail together awaiting trial and that a different man had sold the informant drugs on January 11, 2006. Despite this defense, on the afternoon of June 7, 2006, the jury found Jones guilty of both the drug trafficking charge and the PFO charge. Later that same day, the jury recommended that Jones be sentenced to ten years for the trafficking charge enhanced to twenty years by virtue of Jones's PFO status. On November 20, 2006, the Harlan Circuit Court entered Judgment and Sentence, imposing the twenty-year sentence as recommended by the jury. This appeal followed.

## ANALYSIS

### I. Because Jones Did Not Suffer Prejudice From His Lack of Arraignment, the Trial Court's Failure to Formally Arraign Him Does Not Constitute Grounds for Vacating Jones's Convictions.

On June 7, 2006, after both the Commonwealth and the defense announced that they were ready to proceed on the trafficking and the PFO charges, Jones and his counsel began discussing Jones's belief that he had never been arraigned on the two charges for which he was about to be tried. Ultimately, Jones asked the trial judge if he could speak. The trial judge responded that Jones should speak through his attorney,

4

at which point Jones replied, "she won't speak for me." Jones's trial counsel then stated that her client wanted her to make a motion to dismiss because he claimed he had never been arraigned on the charges. Jones's counsel also told the court that she had informed Jones that because Kentucky was a notice state and he had been served with an indictment and was aware of the charges, the failure to arraign was not prejudicial and she could not in good faith make a motion to dismiss on that ground. Jones then requested new counsel or a continuance for the opportunity to hire new counsel.

At that point, after reviewing Jones's case file, the trial judge noted that pursuant to the trial court's June 2, 2006 Arraignment Order, Jones had been arraigned on May 26, 2006, and had entered a plea of not guilty to the trafficking and PFO charges. After recognizing that Jones had also been granted a motion for a speedy trial in this case, the trial court stated that it was not willing to grant Jones's request for a continuance. Despite the trial court's record, Jones continued to assert that he had not been arraigned and that his motion for a speedy trial was filed in regards to a separate burglary charge (06-CR-00040) and not in the case of his trafficking and PFO charges (06-CR-00094). Believing that the record accurately reflected what had occurred on May 26, 2006, the trial court denied Jones's motion for new counsel and his motion to dismiss, and proceeded with trial under the belief that Jones had previously been arraigned on both charges and that Jones had requested a speedy disposition of both charges.

Following his guilty verdict, Jones filed a *pro se* motion to dismiss and to set aside the verdict, alleging that he was never arraigned on the trafficking or the PFO

5

charges. On June 22, 2006, the trial court denied this motion. On September 26, 2006, after retaining new counsel, Jones filed another motion to set aside his conviction and set the case for a new trial. In this motion, Jones explained that although he had appeared before the court on May 26, 2006, the trial court, rather than performing his scheduled arraignment on the trafficking and PFO charges, addressed the two *pro se* motions he presented before the court on that day. One of those *pro se* motions was a motion for a speedy trial, which Jones again contended was filed in relation to a prior burglary charge (06-CR-00040) and not to the trafficking or PFO charges (06-CR-00094).

The trial court held an evidentiary hearing on November 16, 2006 on Jones's motion to set aside his conviction. Prior to this hearing, the trial court reviewed the videotape from May 26, 2006,[2] and learned that it had, in fact, failed to arraign Jones on the trafficking and PFO charges. In explaining to the parties his review of the record, the trial judge noted that in addition to Jones's two *pro se* motions that were presented to the court on May 26, 2006, Jones's original trial counsel had submitted a motion to withdraw, and Jones's subsequently appointed counsel was in-and-out of the courtroom because of her prior obligations in district court. Regarding Jones's *pro se* motion for a speedy trial, the court stated that it had understood that motion to apply to both of Jones's cases, 06-CR-00040 (the burglary charge) and 06-CR-00094 (the trafficking charge and PFO charge), and that it set both cases for trial at the accelerated date of

---

[2] Although Jones was granted leave to supplement the record with the court's videotape of May 26, 2006, the Harlan Circuit Court was unable to locate this tape. Thus, the videotape of Jones's appearance before the Harlan Circuit Court on May 26, 2006, is not part of the record in this appeal.

6

June 7, 2006 because of that motion. The trial court reasoned that due to the numerous motions and the confusing circumstances present on May 26, 2006, it failed to arraign Jones on the trafficking and PFO charges. Despite this failure to arraign, at the conclusion of the November 16 hearing, the trial court ruled that since Jones had notice of both charges and his counsel was prepared to defend against both charges on June 7, Jones was not prejudiced by the lack of arraignment. Thus, the trial court denied Jones's motion to set aside his conviction.

Jones now argues on appeal that because he did not waive his right to arraignment, but rather raised the issue before the court prior to trial, the trial court's failure to arraign him on the current charges entitles him to a new trial. Despite Jones's timely objection to his lack of arraignment, the fact remains that Jones was not prejudiced by the trial court's failure. Thus, because Jones's lack of arraignment did not affect his awareness of the charges or his readiness to defend against them, he is not entitled to a new trial.

A trial court's failure to formally arraign a defendant was recently addressed in Hutson v. Commonwealth, 171 S.W.3d 743 (Ky. App. 2005). In that case, Hutson was found guilty of first-degree sodomy after properly being arraigned on that charge. Id. at 744. However, when the court proceeded to the penalty phase of Hutson's trial, Hutson and his counsel learned for the first time that Hutson was also being charged as a second-degree persistent felony offender (PFO). Id. At that time, Hutson's counsel objected to going forward and notified the court that Hutson had never been arraigned on the PFO charge. Id. The trial court overruled Hutson's objection and went forward with the penalty phase. On appeal, the Court of Appeals cited to several other

7

jurisdictions in holding that "an arraignment and the taking of a plea are essential requirements of a valid conviction, except where defendant waives these requirements or refuses to enter a plea." Id. The court ultimately found that since Hutson voiced a timely objection to his lack of arraignment, he had not waived his right to arraignment and was entitled to a new trial. Id. at 745. Although the court never discussed the need for a defendant to show how he was prejudiced by a lack of arraignment, the fact is that Hutson was certainly prejudiced by the trial court's failure in his case: Hutson was neither aware of the PFO charge nor prepared to defend against it. Thus, even though the Court of Appeals in Hutson, supra, did not specifically require defendants alleging a lack of arraignment to also show prejudice, the fact remains that Hutson's lack of notice and inability to defend against the charges were an implicit basis for the ruling.

In Terry v. Commonwealth, 253 S.W.3d 466 (Ky. 2008), this Court applied the rule set forth in Hutson and held that because Terry had never been formally arraigned on his criminal mischief charges and because he had informed the trial court of this fact prior to trial, his criminal mischief charges should be vacated. Although this Court did not discuss a specific prejudice requirement,[3] the facts indicate that Terry was unaware of the criminal mischief charges, which had been added to a superseding indictment just weeks before his trial. Id. at 469. Thus, as in Hutson, supra, the facts in Terry demonstrate that typically a reversal is granted due to a lack of arraignment where the defendant has been prejudiced by the failure to arraign.

Other jurisdictions confronting this issue also require defendants alleging a lack

---

[3]Although Terry does not specifically discuss prejudice as it relates to defendants alleging a lack of arraignment, it does hold that defendants alleging that they were not *rearraigned* on a superseding indictment must show prejudice before being entitled to a reversal. 253 S.W.3d at 476-477.

8

of arraignment to show prejudice before being entitled to a new trial. The United States Supreme Court has held that a formal arraignment is not necessary "so long as it appears that the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself in the prosecution." Garland v. Washington, 232 U.S. 642, 645, 34 S. Ct. 456, 457, 58 L. Ed. 772 (1914). In addition, numerous federal circuit courts and state courts have agreed that unless a defendant can show that he was prejudiced by a lack of arraignment or that it affected his substantial rights, a failure to arraign does not constitute grounds for a reversal. U.S. v. Lalonde, 509 F.3d 750, 758 (6th Cir. 2007) (holding that even if Lalonde had properly preserved his lack of arraignment for appellate review, the failure to arraign does not justify reversal because Lalonde's substantial rights were not affected); U.S. v. Mancias, 350 F.3d 800 (8th Cir. 2003); U.S. v. Coffman, 567 F.2d 960 (10th Cir. 1977); U.S. v. Rogers, 469 F.2d 1317 (5th Cir. 1972); U.S. v. Clark, 407 F.2d 1336 (4th Cir. 1969); Seaton v. State, 478 N.E.2d 51, 54 (Ind. 1985); State v. Cadorette, 175 Vt. 268, 271-272, 826 A.2d 101 (2003); State v. Leenhouts, 185 P.3d 132, 134 (Ariz. 2008); State v. O.P., 13 P.3d 1111, 1112-1113 (Wash. Ct. App. 2000).

In agreeing with these courts, we clarify the holdings in Hutson, supra, and Terry, supra, and specifically conclude that a defendant seeking relief due to a lack of arraignment must show that such failure caused him prejudice. Prejudice exists if the failure to arraign prevented the defendant from having proper notice of the charges and an adequate opportunity to defend against them. In this case, despite Jones's lack of arraignment, he had notice of the charges being brought against him and was fully prepared to defend against them the morning of trial. Jones's counsel announced

ready to proceed before the trial began, thoroughly cross-examined the Commonwealth's witnesses, subpoenaed and called witnesses on behalf of Jones, and made appropriate opening and closing arguments. Because Jones was not prejudiced by the trial court's failure to arraign, he is not entitled to a new trial.

**II. The Trial Court Did Not Err When It Denied Jones's Request for A New Lawyer.**

Jones also argues that the trial court erred when it did not grant his request for a new lawyer. Jones contends that because his trial counsel refused to make a motion to dismiss on the ground that he had never been arraigned, she violated her duty of loyalty and duty to avoid conflicts of interests as required by Strickland v. Washington, 466 U.S. 668, 688, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984). We disagree. This Court has held that without "adequate reasons or a clear abuse by counsel," a defendant is not entitled to the appointment of new counsel. Fultz v. Commonwealth, 398 S.W.2d 881, 882 (Ky. 1966). Adequate reasons include a

> (1) complete breakdown of communications between counsel and defendant, (2) conflict of interest, and (3) legitimate interests of the defendant [that] are being prejudiced. Baker v. Commonwealth, 574 S.W.2d 325, 327 (Ky. App. 1978).

First and foremost, the record indicates that during their discussion prior to trial, Jones's counsel informed Jones that she could not in good faith make a motion to dismiss because Jones had prior notice of the charges being brought against him. Despite also notifying the court that she could not make this motion in good faith, Jones's counsel nonetheless then explained to the trial court Jones's contention that he had never been arraigned on the current charges. Even though the trial court erroneously found that Jones had been arraigned, his counsel adequately represented Jones's interests and raised his motion to dismiss despite her own belief that it was

10

without merit. This conduct by Jones's counsel does not amount to a clear abuse and the facts surrounding her representation of Jones do not support any other adequate reason for why she should have been dismissed. Thus, the trial court did not err by denying Jones's motion for new counsel.

### III. The Trial Court Acted Within Its Discretion in Determining that the Photo Array Was Not Unduly Suggestive And Did Not Err By Admitting the Confidential Informant's Pretrial Identification.

Prior to trial, the confidential informant identified Jones's picture from a photo array presented to her by Detective Saylor. In addition to recognizing nearly seventeen individuals as people from whom she had bought drugs, the confidential informant identified Jones specifically as the man from whom she purchased Oxycodone on January 11, 2006. In a pretrial motion, Jones objected to the admission of the confidential informant's out-of-court identification, arguing that the photo array was clearly suggestive. The trial court held a suppression hearing on the morning of trial. After considering the testimony of KSP Trooper Brian Green and Detective Saylor, the court determined that the identification procedure was not unduly suggestive and denied Jones's suppression motion. Jones argues on appeal not only that the trial court erred by failing to suppress the pretrial identification, but also, that the trial court improperly forced the defendant to bear the burden of proof during the suppression hearing and that the trial court erred by not making the requisite finding of facts. Although the trial court did not err with respect to its ultimate finding of admissibility of the pretrial identification, we agree with Jones that the trial court did not follow the proper procedure in reaching that conclusion.

Prior to the presentation of evidence in the suppression hearing, the trial judge

11

inquired of the parties who had the burden of proof. After both attorneys paused and glanced at each other, Jones's attorney stated that she did. Jones then proceeded to call both Brian Green and Detective Saylor and question them about the photo array and the witness's identification. The Commonwealth cross-examined both witnesses following their direct examination. Jones is correct that in a suppression hearing involving a pretrial identification, the proper procedure is for the Commonwealth to call witnesses and show that the circumstances surrounding the identification are reasonable and justify its admission. Abramson, Kentucky Practice: Criminal Practice and Procedure, Vol. 8 § 20:3 (2007-2008). The defendant can then cross-examine the witnesses in order to show that the photo array was unduly suggestive. Id. In this case, however, the trial court allowed the defendant to call and question witnesses first and the Commonwealth to follow with cross-examination. As noted above, this is not the proper way to conduct a suppression hearing. However, since Jones thoroughly questioned both officers about the details of the photo array and the identification, we cannot say that this improper procedure amounts to reversible error. Furthermore, since Jones did not object to this procedural irregularity at trial, this Court would have to find palpable error under RCr 10.26 in order to grant Jones the relief he requests. Because this improper procedure did not affect Jones's substantial rights and did not rise to the level of manifest injustice needed to constitute palpable error, Jones is not entitled to relief on this basis. See RCr 10.26.

Jones also contends that the trial court erred by not making the requisite findings of facts in its suppression ruling. Although the trial court made an ultimate finding that the photo array was not unduly suggestive so as to give rise to a very substantial

12

likelihood of misidentification, Jones is correct that it failed to outline specific factual findings justifying its conclusion as required by RCr 9.78. However, following the trial court's order on this issue, Jones never sought additional findings of fact from the trial court as outlined in CR 52.04. If an appellant fails to request more detailed findings of fact from the trial court, the appellate court will not consider his claim of error on appeal. Vinson v. Sorrell, 136 S.W.3d 465, 471 (Ky. 2004). Thus, because Jones did not ask the trial court for more detailed findings of fact to support its ruling, we will not address this particular claim of error on appeal.

Lastly, Jones claims that the trial court erred when it failed to suppress the confidential informant's pre-trial identification for being unduly suggestive. On appellate review, this Court will accept the trial court's findings of fact during a suppression hearing if they are supported by substantial evidence. Commonwealth v. Banks, 68 S.W.3d 347, 349 (Ky. 2001). We then review the trial court's ultimate decision on the admissibility of the identification evidence under the abuse of discretion standard. King v. Commonwealth, 142 S.W.3d 645, 649 (Ky. 2004). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." Commonwealth v. English, 993 S.W.2d 941, 945 (Ky. 1999).

The Sixth Circuit has held that if a pretrial identification procedure is "so 'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification,'" then the witness's identification testimony violates the defendant's constitutional right to due process and should be excluded at trial. Thigpen v. Cory, 804 F.2d 893, 895 (6th Cir. 1986), cert. denied sub nom. Foltz v. Thigpen, 482 U.S. 918, 107 S. Ct. 3196, 96 L. Ed. 2d 683 (1987), quoting Simmons v. U.S., 390 U.S. 377, 384, 88

13

S. Ct. 967, 971, 19 L. Ed. 2d 1247 (1968). Determining whether the defendant's due process rights were violated requires the trial court to engage in a two-step process:

> First, the court examines the pre-identification encounters to determine whether they were unduly suggestive. If so, the identification may still be admissible if under the totality of the circumstances the identification was reliable even though the [identification] procedure was suggestive. Dillingham v. Commonwealth, 995 S.W.2d 377, 383 (Ky. 1999), (internal citations and quotations omitted).

In Jones's case, after the trial court held that the identification procedure was not so suggestive as to give rise to a very substantial likelihood of irreparable misidentification, it did not need to reach the second step of the analysis. See King, 142 S.W.3d at 649 (stating that if the identification procedure is not unduly suggestive, "the analysis ends and the identification testimony is allowed"). After reviewing the suppression hearing, we conclude that even though trial court did not outline its specific findings of fact, there was substantial evidence in the record supporting its determination that the identification procedure was not unduly suggestive.

During the suppression hearing, Detective Saylor testified that the photographs shown to the confidential informant did not contain any writing on them and had no identifying information other than the suspect's picture. Each photo represented a different individual and there were no identical pictures in the array. Saylor stated that after giving the informant over twenty of these photographs, he simply asked her if she remembered having dealings with any of them. He testified that no one prompted the informant and she identified nearly seventeen of the suspects entirely on her own. When she got to Jones's photograph, she identified him as "Russell Jones," recalled that Jones had sold her Oxycodone, and that Clyde Daniels had been with them when

14

the sale occurred. Although the majority of the photos were compiled using the informant's prior descriptions of suspects and Saylor's knowledge of individuals he believed sold drugs in Harlan County, Saylor testified that he also included in the array pictures of people who he did not believe had had dealings with the informant, and she excluded those pictures from her identifications. Detective Saylor, however, did not testify regarding whether he took measures to ensure that the other photographs were substantially similar to that of Jones's, and unfortunately, the photo array was neither entered into evidence nor made part of the record.

Detective Saylor's testimony establishes that the photo array was not necessarily compiled for the sole purpose of identifying Russell Jones, but rather, so that the informant could identify the different people from whom she had been buying drugs over the course of her involvement with the Kentucky State Police. Even though it is possible that no efforts were made to ensure that the other suspects in the array had the same characteristics as Jones, the fact remains that over twenty photos were presented to the informant, including some pictures of people Saylor knew not to be drug dealers; the informant identified Russell Jones by name; and she recalled the details of the transaction when he sold her Oxycodone. Therefore, we find that based on the testimony of Detective Saylor, it was not arbitrary or unreasonable for the trial court to conclude that the photo array was neutral and that the confidential informant could testify at trial. However, even if this Court assumes that the compiled photographs were suggestive, since under the totality of circumstances the confidential informant's identification was nonetheless reliable, her identification testimony would still be admissible at trial. See Dillingham, 995 S.W.2d at 383.

15

In Savage v. Commonwealth, 920 S.W.2d 512, 513 (Ky. 1995), this Court adopted the five factors used to determine the reliability of the identification as set forth in Neil v. Biggers, 409 U.S. 188, 199-200, 93 S. Ct. 375, 382, 34 L. Ed. 2d 401 (1972). Those factors are:

> "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil, 409 U.S. at 199-200, 93 S. Ct. at 382.

In Jones's case, the confidential informant met Jones in a convenience store parking lot in the middle of the day, rode in a car with Jones and Daniels to a secluded location, and purchased drugs from Jones. Following her encounter with Jones, she accurately described him to Detective Saylor, correctly noting that he was older, had long gray hair, and had a tattoo on the left-side of his face. Although Detective Saylor presented the photo array to the informant approximately three months after the controlled drug buy, she was nonetheless certain in her identification of Jones, as was evident by her ability to recall the exact drug transaction and the presence of Clyde Daniel. Therefore, even if the photo array in this case had been suggestive, the confidential informant's testimony was still admissible because based on the above enumerated factors, her identification of Jones was reliable.

**IV. Because Jones Did Not Object to the Tendered Jury Instructions At Trial, He Is Barred From Claiming That the Evidence Was Insufficient To Support A Particular Instruction On Appeal And, In Any Event, There was No Palpable Error.**

Following the presentation of the evidence, the trial court instructed the jury as follows with regard to the trafficking charge:

> You will find the Defendant guilty of First-Degree Trafficking in a

16

Controlled Substance under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
A. That in this county on or about the 11th day of January, 2006, and before the finding of the indictment herein, he sold, transferred, distributed or dispensed two (2) one-half (1/2) Oxycodone tablets to an informant;
AND
B. That in so doing, he knew the substance being sold was oxycodone, and controlled substance.

Jones now claims that the trial court erred in instructing the jury on the theories of "transfer," "distribute," and "dispense" because the Commonwealth's evidence only supported a finding that he "sold" a controlled substance. Because Jones did not object to the tendered jury instructions at trial, Kentucky's Rules of Criminal Procedure prevent him from raising this issue on appeal. RCr 9.54(2) states:

> No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection.

This Court has long held that pursuant to RCr 9.54, if a defendant does not raise his specific jury instruction claim of error to the trial court, he is precluded from doing so on appeal. Commonwealth v. Wolford, 4 S.W.3d 534, 535 (Ky. 1999); Commonwealth v. Collins, 821 S.W.2d 488, 492 (Ky. 1991); Commonwealth v. Duke, 750 S.W.2d 432, 433 (Ky. 1988); Hopper v. Commonwealth, 516 S.W.2d 855, 857 (Ky. 1974). Because this Court will not now disrupt this long-standing procedural rule, we decline to address the merits of Jones's claim regarding the jury instructions as a preserved issue.

Jones also requests review of this unpreserved claim of error under the palpable error standard of RCr 10.26. For an unpreserved error to be deemed palpable, it must

be obvious and clear from the record, affect the defendant's substantial rights, and result in manifest injustice. Manifest injustice exists where the defendant can show the "probability of a different result [absent the error] or error so fundamental as to threaten a defendant's entitlement to due process of law." Martin v. Commonwealth, 207 S.W.3d 1, 3 (Ky. 2006). In Jones's case, the trial court's inclusion of the words "transferred, distributed, or dispensed" in the jury instructions, even if erroneous, was neither an obvious error clear from the record nor an error that resulted in manifest injustice.

The Commonwealth presented ample proof in this case of Jones's role in trafficking in a controlled substance. Such proof included the audio tape of the drug transaction, where Jones's voice is recognizable and where he identifies himself as "Russell"; the confidential informant's identification of Jones prior to trial and during trial as the person from whom she received the Oxycodone; and Detective Saylor's testimony regarding his interactions with the informant and Jones. Thus, even if the other means of trafficking had not been included in the instructions, there is not a probability that a different result would have been reached and no evidence to suggest that Jones's entitlement to due process was threatened. Because there was ample proof that Jones sold Oxycodone, no palpable error resulted and Jones is not entitled to a new trial on this basis.

## V. The Trial Court Did Not Err In Permitting the Commonwealth to Impeach Daniels With His Prior Inconsistent Statements.

During trial, Clyde Daniels testified as a witness for the defense. In particular, Daniels stated that the man who sold the informant drugs on January 11, 2006, was a heavy-set man with slicked-back hair in his 60's, who answered to the name "Russell."

18

Daniels testified that although he had seen Russell Jones previously in and around Cawood, Jones was not the man who sold the informant drugs. Indeed, Daniels stated that he had met Jones for the first time two weeks previously in the Harlan County Jail. When cross-examined by the Commonwealth, Daniels stated that although he was in the convenience store parking lot when the informant bought the drugs, he did not actually see the drug exchange. The Commonwealth then asked Daniels if he had previously told the informant that he could get her "a 40." Daniels replied that he had said that, but that the informant actually bought the pill herself. Next, the Commonwealth asked Daniels if after the drug exchange, he had told the informant that "Jonsie" could get her anything she wanted. Daniels replied that he did not recall making that statement. In order to impeach this testimony, the Commonwealth then requested to play the remaining portion of the audiotape, which the trial court allowed. The audiotape revealed that after Daniels and the informant had dropped Jones off at his car, Daniels had told the informant that "Jonsie can get you anything you want," "Russell always got them on him," and "I've known Russell for a long time." In addition, regarding Daniels's claim that he did not see the drug exchange, the audiotape included Daniels telling the informant that "I figured I could help you out," "Tell anybody I sent you down to buy something, and they'll sell it to you," "If I get something that somebody else is wanting, I can get it for them," and "I'm glad I could help you."

Although he did not object at trial, Jones now claims that the trial court committed palpable error in allowing the Commonwealth to impeach Daniels on a matter not material to the merits of the case, i.e., whether Daniels himself was involved in the drug transaction. Despite Jones's allegation of palpable error, we agree with the

19

Commonwealth that the trial court did not abuse its discretion when it allowed the admission of Daniels's prior inconsistent statements.

In Jett v. Commonwealth, 436 S.W.2d 788, 792 (Ky. 1969), this Court held that prior inconsistent statements can be introduced as substantive evidence in order to impeach a witness who testifies at trial. However, one of the prerequisites to the admission of these out-of-court statements is that "the statement must be material and relevant to the issues of the case." Nugent v. Commonwealth, 639 S.W.2d 761, 765 (Ky. 1982). In Jones's case, Daniels's statements that related to Jones and to Daniels's prior knowledge of Jones were certainly relevant to the merits of this case. These prior inconsistent statements refuted Jones's defense that he was not present at the scene of the crime and that the two had only recently met.

Daniels's prior statements suggesting that he was involved in the drug sale are also relevant to this case because they relate to Daniels's credibility and the truthfulness of his testimony. This Court has held that "[t]he credibility of a witness' relevant testimony is always at issue, and the trial court may not exclude evidence that impeaches credibility even though such testimony would be inadmissible to prove a substantive issue in the case." Sanborn v. Commonwealth, 754 S.W.2d 534, 545 (Ky. 1988), overruled on other grounds by Hudson v. Commonwealth, 202 S.W.3d 17 (Ky. 2006). Daniels credibility was particularly relevant in this case because other than Jones, he was the only defense witness who testified that Jones was not present during the drug buy. Daniels's prior contradictory statements about even his own involvement in the sale are still relevant to his credibility as a witness and to Jones's claims of innocence. Thus, since Daniels's credibility and his full account of what occurred on

20

January 11, 2006, were material to this case, the trial court did not abuse its discretion in admitting Daniels's prior inconsistent statements.

## CONCLUSION

Although the trial court failed to arraign Jones on the trafficking and PFO charges, Jones had ample notice of the charges and an adequate opportunity to prepare his defense. Thus, because Jones suffered no prejudice from the trial court's failure, his lack of arraignment is not grounds for reversal. Furthermore, Jones's other claims of error are either without merit or not properly preserved for appellate review. Therefore, the November 20, 2006 Judgment of the Harlan Circuit Court convicting Jones of trafficking in a controlled substance (1st Degree) and being a persistent felony offender (PFO) (2nd Degree) is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Euva D. May
Assistant Public Advocate
Appellate Division
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, KY 40601

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

David Bryan Abner
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY 40601

21